| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Rabin J. Pournazarian (SBN 186735)<br>Price Law Group, APC<br>15760 Ventura Blvd., Suite 1100<br>Encino, CA 91436<br>(818) 995-4540 Telephone<br>(818) 995-9277 Fax<br><br>*Attorney for* Plaintiffs | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

</div>

| | |
|---|---|
| In re:<br><br>Jesse & Teresa Coleman<br><br><div align="right">Debtor(s).</div> | |
| Jesse & Teresa Coleman<br><div align="right">Plaintiff(s),</div><br>vs.<br><br>Countrywide Bank, FSB.; Mortgage Electronic Registration Systems, Inc., Bank of America, N.A. & Countrywide Home Loans<br><div align="right">Defendant(s).</div> | CHAPTER: 13<br><br>CASE NO.: 09-36374<br><br>ADVERSARY NO.: LA09-02279-VZ<br><br>*DATE = 1/12/10*<br>*TIME = 11:00 A.M.*<br>*COURTROOM = 1368* |

<div align="center">

**MOTION FOR DEFAULT JUDGMENT**
**UNDER LOCAL BANKRUPTCY RULE 7055-1**

</div>

**TO THE DEFENDANT, DEFENDANT'S ATTORNEY AND OTHER INTERESTED PARTIES:**

1. Name of Defendant(s) against whom default judgment is sought *(Name)*:
   Countrywide Bank, FSB.; Mortgage Electronic Registration et al.

2. Plaintiff filed the Complaint in the above-captioned proceeding on *(specify date)*: 10/5/09

3. The Summons and Complaint were served on Defendant by ☐ Personal Service ☒ Mail Service
   on the following date *(specify date)*: 10/13/09

4. A conformed copy of the completed Return of Summons form is attached hereto.

5. The time for filing an Answer or other response expired on *(specify date)*: 11/5/09

6. No Answer or other response has been filed or served by Defendant.

7. The default of Defendant:
   a. ☐ Has not yet been entered, but is hereby requested
   b. ☒ Was entered on *(specify date)*: 11/13/09

8. **A Status Conference:**
   a. ☐ Is scheduled for *(specify date, time, and place)*:
   b. ☒ Was held on *(specify date, time, and place)*: 12/17/09, 10:00 a.m., 1368

<div align="center">

*(Continued on next page)*

</div>

---

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

<div align="right">

**F 7055-1.2**

</div>

Motion for Default Judgment under Local Bankruptcy Rule 7055-1 - *Page 2*                    **F 7055-1.2**

| In re<br>Jesse & Teresa Coleman<br><div align="right">Debtor(s).</div> | CHAPTER: 13<br>*ADVERSARY CASE No. : LA09-02279-VZ*<br>CASE NO.: 09-36374 |
|---|---|

9. As proof that Plaintiff is entitled to the relief requested in the Complaint, Plaintiff:

    a. ☒ Relies on the Complaint and documents attached thereto.

    b. ☒ Attaches the following documents to establish a prima facie case:

       (1) ☒ Declaration of *(specify)*: Rabin J. Pournazarian

       (2) ☒ Declaration of *(specify)*: Jesse & Teresa Coleman

       (3) ☐ Other *(specify)*:

10. As further support for entry of a Default Judgment, Plaintiff submits a Memorandum of Points and Authorities *(Optional)*.

11. **DECLARATION OF NON-MILITARY STATUS:** No defendant named in Paragraph 1 above is in the military service so as to be entitled to the benefits of the Servicemembers Civil Relief Act (Pub. L. 108-189) (50 U.S. Code App. §§ 501-594). The undersigned declares under penalty of perjury that this statement of defendant's non-military status is true and correct and is made under penalty of perjury under the laws of the United States of America based upon the undersigned's review of said Defendant's Statement of Affairs and Statement of Income and Expenditures filed in this case and is based upon the undersigned's lack of any information or belief that there has been any change of circumstances as to defendant's non-military status.

12. Defaulting party is not an infant or incompetent party.

WHEREFORE, Plaintiff prays that this Court enter a Default Judgment in favor of Plaintiff. A Copy of the proposed Default Judgment is submitted herewith and has been served.

Dated: 12/17/09

Respectfully submitted,

Price Law Group, APC
_____
*Firm Name*

By: _____

Name: Rabin J. Pournazarian
_____
*Attorney for Plaintiff or Plaintiff*

This form is optional. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                    **F 7055-1.2**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

Plaintiffs Jesse & Teresa Coleman ("Debtors"), seek the entry of default judgment against Defendants on the Debtors' Complaint to Determine Value of Real Property…and to Extinguish the Lien of Countrywide Bank, FSB for beneficiary Mortgage Electronic Registration Systems, Inc. (serviced by Bank of America, N.A.).  The entry of default judgment against Defendants is appropriate under Rule 55 (b)(2) of the Federal Rules of Civil Procedure because: (1) Defendants failed to respond to the Debtors' complaint in this adversary proceeding; and (2) all of the elements of the Debtors' claims for determining value of real property and extinguishing lien of Countrywide Bank, FSB for beneficiary Mortgage Electronic Registration Systems, Inc. (serviced by Bank of America, N.A.)are present in this case.

### II.

### STATEMENT OF FACTS

A.   BANKRUPTCY BACKGROUND

Debtors filed this Chapter 13 case on September 29, 2009. Debtors owned and resided at 20930 Dalton Avenue, Torrance, CA 90501 (the "Real Property").  According to a full appraisal report, the Real Property had a value of $325,000.00.  A true and correct copy of the appraisal is attached to Exhibit "1" (the Complaint) as **Exhibit "A."**  As of the date of filing, the Real Property was subject to a first deed of trust in favor of lender, Countrywide Home Loans, Inc. (hereinafter "Countrywide 1").  The beneficiary of the deed of trust

is Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS 1"). A true and correct copy of the First Deed of Trust is attached to the Complaint as **Exhibit "B."** The current servicing agent of the loan is Bank of America, N.A. (hereinafter "Bank of America 1"), which is owed a balance of $491,998.56 as of the Filing Date. A true and correct copy of a Bank of America 1 mortgage statement is attached to the Complaint as **Exhibit "C".** The Real Property was subject to a second deed of trust in favor of Countrywide Bank, FSB. (hereinafter "Countrywide 2"). The beneficiary of the deed of trust is Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS 2"). A true and correct copy of the Second Deed of Trust is attached to the Complaint as **Exhibit "D."** The current servicing agent of the loan is Bank of America, N.A. (hereinafter "Bank of America 2"), which is owed a balance of $92,250.00 as of the Filing Date. A true and correct copy of a Bank of America 2 mortgage statement is attached to the Complaint as **Exhibit "E."**

<div align="center">II.</div>

B.    <u>DEBTORS' COMPLAINT AGAINST DEFENDANTS</u>

On or about October 5, 2009, Debtors filed a complaint against Countrywide Bank, FSB for beneficiary Mortgage Electronic Registration Systems, Inc. (serviced by Bank of America, N.A.) to determine the value of real property, extent of secured claims and to extinguish the lien of Beneficial pursuant to Rule 3012 of the Federal Rules of Bankruptcy. The summons and complaint and other materials were served on the defendant by mail on or about October

1  13, 2009.  The Request for Entry of Default was entered on November

2  13, 2009.

3                                    III.

4                                **ARGUMENT**

5

6  A.   A DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST THE DEFENDANTS

7  BECAUSE ALL OF THE ELEMENTS ARE PRESENT FOR THE COURT TO DETERMINE

8  THE VALUE OF PROPERTY AND EXTINGUISH THE LIEN OF COUNTRYWIDE BANK,

9  FSB. FOR BENEFICIARY MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

10  (SERVICED BY BANK OF AMERICA, N.A.).

11

12       **AN APPRAISAL SHOWS THAT THE VALUE OF THE REAL PROPERTY WAS**

13       **$325,000.00 AS OF THE FILING DATE.**

14       Pursuant to Rule 3012 of the Federal Rules of Bankruptcy

15  Procedure (hereinafter "FRBP"), "[t]he court may determine the value

16  of a claim secured by a lien on property in which the estate has an

17  interest, on motion of any party in interest and after a hearing on

18  notice to the holder of the secured claim and any other entity as the

19  court may direct …"

20       In this case, Debtors have provided the Court with a full

21  appraisal of the Real Property showing a market value of $325,000.00.

22  The appraisal was completed on August 3, 2009 and was prepared by a

23  disinterested, duly qualified expert within the meaning of Fed. R.

24  Evid. 702.  Accordingly, Debtors have filed a complaint under

25  separate cover requesting that the court determine the value of the

26  Real Property to be $325,000.00, determine the extent of secured

27  claims and to extinguish the lien in favor of Countrywide Bank, FSB

28

for beneficiary Mortgage Electronic Registration Systems, Inc.
(serviced by BAC Home Loans Servicing, LP).

   **GIVEN THE VALUE OF THE REAL PROPERTY, THE FIRST DEED OF TRUST IS UNDERSECURED AND THE SECOND DEED OF TRUST IS WHOLLY UNSECURED.**

   FRBP 3012 implements Section 506(a) of the Bankruptcy Code with respect to valuation of a secured claim in order to determine the extent to which it is secured and the extent to which it is unsecured.   Section 506(a) provides:

   "[a]n allowed claim of a creditor secured by a lien on
   property in which the estate has an interest,… is a secured
   claim to the extent of the value of such creditor's
   interest in the estate's interest in such property,… and is
   an unsecured claim to the extent that the value of such
   creditor's interest … is less than the amount of such
   allowed claim."

   Additionally, section 506(d) states that, "[t]o the extent that a lien secures a claim against the debtor that it is not an allowed secured claim, such lien is void."

   Section 506 is a section of general applicability and a Chapter 13 case allows bifurcation of a claim into secured and unsecured portions.   Wilson v. Commonwealth Mortgage Corp., 895 F.2d 123, 22 C.B.C. 561 (3rd Cir. 1990).


   **GIVEN THE VALUE OF THE REAL PROPERTY, THE FIRST DEED OF TRUST IS UNDERSECURED AND THE SECOND DEED OF TRUST IS WHOLLY UNSECURED.**

   FRBP 3012 implements Section 506(a) of the Bankruptcy Code with respect to valuation of a secured claim in order to determine the

1  extent to which it is secured and the extent to which it is

2  unsecured.   Section 506(a) provides:

3      "[a]n allowed claim of a creditor secured by a lien on

4      property in which the estate has an interest,… is a secured

5      claim to the extent of the value of such creditor's

6      interest in the estate's interest in such property,… and is

7      an unsecured claim to the extent that the value of such

8      creditor's interest … is less than the amount of such

9      allowed claim."

10  Additionally, section 506(d) states that, "[t]o the extent that

11  a lien secures a claim against the debtor that it is not an allowed

12  secured claim, such lien is void."

13  Section 506 is a section of general applicability and a Chapter

14  13 case allows bifurcation of a claim into secured and unsecured

15  portions.  Wilson v. Commonwealth Mortgage Corp., 895 F.2d 123, 22

16  C.B.C. 561 (3rd Cir. 1990).

17  **AS A WHOLLY UNSECURED LIENHOLDER, COUNTRYWIDE 2 FOR BENEFICIARY**

18  **MERS 2(SERVICED BY BANK OF AMERICA 2) RIGHTS MAY BE MODIFIED**

19  **UNDER 11 U.S.C. §1322(B)(2) AND IT MAY BE TREATED AS AN**

20  **UNSECURED CREDITOR.**

21  Many courts, even prior to the passage of the BAPCPA of 2005,

22  had already held that Nobleman v. American Savings Bank, 13 S.Ct.

23  2106 (1993) was inapplicable when senior liens were in excess of the

24  fair market value of the property.  Therefore, the instant case would

25  fall outside the protection otherwise afforded by Nobleman, because

26  claimant's lien is wholly unsecured.

27  The passage of the Bankruptcy Reform Act of 1994 did not change

28  the ability of lien stripping of a wholly unsecured creditor.  It

merely provided that a loan which fully matured prior to the filing
of the Chapter 13 petition, or a loan which matures during the life
of the plan, may be paid through the plan.   11 U.S.C. §1322(b)(2).

Under Nobleman, a lien cannot be stripped if any portion of the
interest was secured.   Thus, by implication, when a lien is wholly
unsecured, it can be stripped.   Courts have consistently
distinguished between Nobleman and facts involving a wholly unsecured
lien holder.   In fact, most reported decisions have rejected the
proposition that Nobleman prohibits modification of a totally
unsecured lien on a chapter 13 debtor's principal residence.   These
Courts, along with the 9th Circuit Bankruptcy Appellate Panel,
interpret Nobleman to require the existence of an allowable secured
claim as the predicate for the protection form modification in 11
U.S.C. §1322(b)(2).

In the 9th Circuit Bankruptcy Appellate Panel Case, In re Lam,
the Court held that:

> "The Nobleman decision holding that section 1322(b) bars a
> chapter 13 plan from modifying the rights of holders of claims,
> secured only by the debtor's principal residence, does not apply
> to holders of totally unsecured claims.   The extension of the
> protections of section 1322(b) to wholly unsecured lien holders
> is contrary to the provisions of the bankruptcy code allowing
> dischargeability of unsecured claims."

In In re Lam, 121 B.R. 36, 41 (9th Cir. B.A.P. 1997), the Court
concurred with the holding of several cases that permitted
modification of secured creditor's claims that were wholly unsecured.
Id., at 41.

Yet another California case has a similar holding to In re Lam.
The Court in In re Geyer sustained a debtor's motion to avoid a lien
brought under Bankruptcy Code Section 506(d) and held that a Chapter

1 │ 13 debtor may strip off a lien on his or her primary residence when

2 │ the lien holder's interest is totally unsecured, stating that:

3 │    [T]he term 'secured claim' as used in section 1322(b)(2) has the
same meaning as the term "secured claim" in section 506(a).

4 │    Unless there is some equity to which the creditor's lien
attaches, there is no allowed secured claim and no entitlement

5 │    to the protection against modification contained in section
1322(b)(2).  A chapter 13 debtor may 'strip-off' a lien on his

6 │    or her primary residence under the plan or under section 506(d)
when the lien holder's interest is totally unsecured.

7 │

8 │ In re Geyer, 203 B.R. 726, 729 (S.D. Cal. 1996).

9 │    The Court's ruling in the case at bar should be unaffected by

10 │ the landmark Supreme Court case in Nobleman.  In Nobleman, Justice

11 │ Thomas held that Code Section 1322 (b)(2) prohibits splitting an

12 │ undersecured home mortgage holder's claim into its secured and

13 │ unsecured portions for purposes of confirmation of a Chapter 13 Plan.

14 │ Nobleman, 13 S.Ct. 2106.  Unlike the case at bar, in Nobleman, the

15 │ lien to be stripped was the holder of the first deed of trust for

16 │ $71,335.00, and the debtor's principal residence was worth

17 │ $23,500.00.  Thus, the bank's claim was at least partially secured by

18 │ the debtor's home.

19 │    Here, Countrywide 2's lien for the beneficiary MERS 2 (serviced

20 │ by Bank of America 2) is not the first but the second deed of trust.

21 │ Further, there can be no reasonable contention that any part of the

22 │ second deed of trust is secured.  Thus, the facts, reasoning and

23 │ holding of Nobleman are inapplicable to this case.

24 │    In this case, the Real Property is Debtor's principal residence

25 │ which has a market value of $325,000.00.  Countrywide 1 for the

26 │ beneficiary MERS 1 (serviced by Bank of America 1) has a balance of

27 │ $491,998.56.  Thus, Countrywide 2's second secured interest for the

28 │ beneficiary MERS 2 (serviced by Bank of America 2) in the Real

1  Property is zero because there is absolutely no equity to which its

2  lien could attach.

3      Because Countrywide 2's second mortgage interest for the

4  beneficiary MERS 2 (serviced by Bank of America 2) is a totally

5  unsecured claim on Debtors' residence and it does not have an

6  allowable secured claim, Countrywide 2 for the beneficiary MERS 2

7  (serviced by Bank of America 2) cannot seek protection from

8  modification under 11 U.S.C. §1322 (b)(2) and Debtors may modify the

9  claim and avoid claimant's lien.  Therefore, Countrywide 2's second

10  deed of trust for the beneficiary MERS 2 (serviced by Bank of America

11  2) should be extinguished, reconveyed, and treated as unsecured for

12  purposes of this Chapter 13 proceeding.

13      **IN RE DEWSNUP IS DISTINGUISHED FROM THE LIEN STRIPPING REQUESTED**

14      **IN THIS CHAPTER 13 CASE.**

15      The Chapter 7 case Dewsnup v. Tim, 502 U.S. 410, 112 S. Ct. 773,

16  116 L.Ed.2d 903 (1992) has no application to this Chapter 13 case.

17  The relevant cases are those Chapter 13 cases cited by Debtors above

18  which turn on interpretations of §1322(b)(2).  Those interpretations

19  conclude that a Chapter 13 plan may modify the rights of claim

20  holders, other those **secured** only by a security interest in real

21  property that is the debtors' principal residence.

22      Section 1322(b)(2), in light of §506(a), does not preclude

23  modification by a Chapter 13 Plan of the rights of holders of

24  unsecured claims even those of holders of deeds of trust which are

25  completely unsecured.

26      To this end, Justice Scalia, in his dissent in Dewsnup, pointed

27  out the difference between lien stripping in a Chapter 7 case and

28  lien stripping in a Chapter 13 case when he stated that,

"Respondents assume, for example, that a debtor in a
Chapter 13 cannot strip down a mortgage placed on the
debtor's home,; but that assumption may beg the very
question the Court answers today.  True, Section 1322
(b)(2) provides that Chapter 13 filers may not "modify the
rights of secured claims", that are "secured only by a
security interest in real property that is the debtor's
principal residence.  But this can be and has been read, in
light of Section 506(a), to prohibit modification of the
mortgagee's rights only with respect to the operation of
his claim that is deemed secured under the Code.  See,
e.g., In re Hart 923 F.2d 1410, 1415 (CA 10 1991); Wilson
v. Commonwealth Mortgage Corp., 895 F.2d 123, 127 CA3
1990)."

Dewsnup, 502 U.S. 410, 428, 112 S. Ct. 773, 784.

In Denver v. Internal Revenue Service, 164 B.R. 132 (C.D. Cal.
1994), the Court held that in spite of Dewsnup, stripping an IRS lien
on a principal residence is permissible in a Chapter 11 case.  The
Court noted that while under Dewsnup, Chapter 7 debtors cannot use
§506 to strip liens on an undersecured claim, the Supreme Court
specifically reserved the question as to the applicability of its
ruling in Dewsnup to cases under the reorganization chapters.  Id.,
at 133.  The Denver Court discussed the issue of lien stripping in
Chapter 13 cases and cited the 10th Circuit case of In re Hart wherein
the Court reasoned:

The dispositive issue in this case is whether Eastland's
undersecured loan may be bifurcated into two claims by
applying general principals of Section 506(a) to the
mortgage and then protecting only the secured claim by
provisions of Section 1322(b).  We believe it can.

In re Hart, 923 F.2d 1410, 1413 (10th Cir. 1991).

After citing In re Hart, in Denver the Court went on to state:

"If Section 506 does not permit debtors to bifurcate
undersecured claims and strip down liens to their
collateral value, then all secured creditors would be freed
of any concern that debtors could reduce the amount of

their liens while retaining property.  If Congress did not intend to allow lien stripping in general in Chapter 13 cases, then why would it bother to draft the exclusionary language of Section 1322.  As Justice Stevens' concurring opinion in <u>Nobleman</u> emphasized, the legislative history of Section 1322(b)(2) reflects Congressional desire to provide special protections to residential lenders."  <u>Denver</u>, at 141.

Accordingly, the language of the relevant Bankruptcy Code sections and the decisions interpreting those sections warrants a finding that Countrywide 2's second lien for the beneficiary MERS 2 (serviced by Bank of America 2) arising from the deed of trust may be extinguished and that its claim may be treated as general unsecured in Debtors' plan.

<div align="center">III.</div>

<div align="center"><u>CONCLUSION</u></div>

Based on the foregoing, the Debtors respectfully request the relief requested in its adversary be granted by default judgment. Clearly the Deed of Trust of Countrywide 2 for the beneficiary MERS 2 (serviced by Bank of America 2) is wholly unsecured as evidenced by the appraisal, deeds of trust and mortgage statements.  Based on the foregoing, the Plaintiffs respectfully request that the Second Deed of Trust be ordered extinguished, and deemed an unsecured claim and to have no further force or effects as a secured lien against the Plaintiffs' residential property. In the alternative, the Plaintiffs respectfully request to deem the Second as a unsecured claim during the life of the Plaintiffs' chapter 13 plan, that upon the completion of all plan payments and entry of discharge in this case pursuant to 11 U.S.C. §1328, the lien of

1  Countrywide 2 for the beneficiary MERS 2 (serviced by Bank of

2  America 2) will be void and will not constitute an encumbrance on

3  the real property described in the complaint, that upon completion

4  of all plan payments and upon entry of discharge in this case,

5  Countrywide 2 for the beneficiary MERS 2 (serviced by Bank of

6  America 2) is ordered to expeditiously reconvey the Deed of Trust

7  and otherwise take such steps as are required to clear title, free

8  of said lien, as to real property described in this complaint.  The

9  lien shall remain valid if the case is dismissed or converted to

10  another chapter.

11

12

13  DATED: December 17, 2009          Price Law Group, APC

14

15                                    By: _____

16                                        Rabin J. Pournazarian
                                          Attorney for Debtors

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF RABIN J. POURNAZARIAN

I, Rabin J. Pournazarian, declare:

1. That I am the attorney of record for Jesse & Teresa Coleman ("Debtors") in the above-captioned matter and as to the following facts, I know them be true of my own personal knowledge, and if called upon to testify in this action, I could and would testify competently thereto.

2. On or about October 5, 2009, I caused to be filed a Complaint to Determine Value of Real property, determine the extent of Secured Claims and to Extinguish the Lien of Countrywide Bank, FSB for beneficiary Mortgage Electronic Registration Systems, Inc. (serviced by Bank of America, N.A.). A true and correct copy of the Complaint is attached hereto as Exhibit "1" and incorporated herein by this reference.

3. The summons and complaint and other materials were served on the defendant by mail on or about October 13, 2009. A true and correct copy of the completed Summons and Notice of Status Conference is attached hereto as Exhibit "2" and incorporated herein by this reference.

4. No answer or other response was filed by the Defendants by November 5, 2009. A true and correct copy of the Docket Report is attached hereto as Exhibit "3" and incorporated herein by this reference.

5. Debtors request the relief requested in its adversary be granted by default.

1  I declare under penalty of perjury that the foregoing facts are

2  known by me to be true and correct to the best of my knowledge and

3  that this declaration is executed on this 17th day of December,

4  2009 at Encino, California.

5

6  _____

7  Rabin J. Pournazarian
   Attorney for Debtors

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DECLARATION OF JESSE & TERESA COLEMAN</u>

We, Jesse and Teresa Coleman, declare:

1.   We are the debtors in a Chapter 13 case number **09-bk-36374**. We have personal knowledge of the facts stated in this declaration and could and would testify thereto if called as a witness.

2.   We filed this case on September 29, 2009.  We are the owners of a residential property, located 20930 Dalton Avenue, Torrance, CA 90501 (hereinafter the "REAL PROPERTY").  We live on the REAL PROPERTY and disclosed it in our bankruptcy schedules.

3.   On or about August 3, 2009, we hired Quality Appraisal Service to provide an opinion of the fair market value of the REAL PROPERTY.  We have no personal or business relationship with any employee of Quality Appraisal Service.

4.   On or about October 5, 2009, we filed a Complaint to Determine Value of Real Property, Determine the Extent of Secured Claims and to Extinguish the Lien of COUNTRYWIDE BANK, FSB. FOR BENEFICIARY MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (SERVICED BY BANK OF AMERICA, N.A.).

5.   The REAL PROPERTY was subject to a first deed of trust in favor of lender, Countrywide Home Loans, Inc.  The beneficiary of the deed of trust is Mortgage Electronic Registration Systems, Inc.  A true and correct copy of the First Deed of Trust is attached to Exhibit "1" (the Complaint) as **Exhibit "B."**  The current servicing agent of the loan is Bank of America, N.A., which is owed a balance of $491,998.56 as of the Filing Date. We do not dispute this

1   amount. A true and correct copy of a mortgage statement is attached
2   to the Complaint as **Exhibit "C."**
3   6.    The REAL PROPERTY was also subject to a second deed of trust in
4   favor of Countrywide Bank, FSB.  The beneficiary of the deed of
5   trust is Mortgage Electronic Registration Systems, Inc.  A true and
6   correct copy of the Second Deed of Trust is attached to the
7   Complaint as **Exhibit "D."**  The current servicing agent of the loan
8   is Bank of America, N.A., which is owed a balance of $92,250.00 as
9   of the Filing Date.  A true and correct copy of a mortgage
10   statement is attached to the Complaint as **Exhibit "E."**

12   I declare under penalty of perjury that the foregoing is true
13   and correct.  Executed on December _17_, 2009 at _TORRANCE_ ,
14   California.

Jesse Coleman

Teresa Coleman

15

# EXHIBIT "1"

1 | Rabin J. Pournazarian (SBN 186735)
**Price Law Group, APC**
2 | 15760 Ventura Blvd., Suite 1100
Encino, California  91436
3 | (818) 995-4540 Telephone
(818) 995-9277 Facsimile
4 |
5 | Attorneys for Plaintiffs
Jesse & Teresa Coleman
6 |
7 |                 **UNITED STATES BANKRUPTCY COURT**
8 |        **CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION**
9 |
10 | In re:
11 | **JESSE COLEMAN &**
12 | **TERESA COLEMAN,**
13 |
14 |                 Debtors
15 |
16 | JESSE COLEMAN &
17 | TERESA COLEMAN,
18 |                 Plaintiffs,
19 | v.
20 | COUNTRYWIDE BANK, FSB.;
MORTGAGE ELECTRONIC
21 | REGISTRATION SYSTEMS, INC.,
BANK OF AMERICA, N.A. &
22 | COUNTRYWIDE HOME LOANS, INC.
23 |                 Defendants.
24 |
25 | TO THE DEFENDANTS COUNTRYWIDE BANK, FSB.; MORTGAGE ELECTRONIC
26 | REGISTRATION SYSTEMS, INC. & BANK OF AMERICA, N.A.:
27 |
28 | Plaintiffs Jesse & Teresa Coleman, allege:

Case No:  09-bk-36374

Chapter 13

Adv. No:

**COMPLAINT TO DETERMINE VALUE OF REAL PROPERTY, DETERMINE THE EXTENT OF SECURED CLAIMS AND TO EXTINGUISH THE LIEN OF COUNTRYWIDE BANK, FSB. FOR BENEFICIARY, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.(SERVICED BY BANK OF AMERICA, N.A.)**

-1-

1.   The court has jurisdiction over this proceeding pursuant to 28 U.S.C. 1334(a).

2.   This is a core proceeding under 28 U.S.C. §157(b)(2)(K) and (O).

3.   Venue properly lies in this judicial district pursuant to 28 U.S.C. §1409(a), in that the instant proceeding is related to the case under Title 11 of the United States Code, which is before this court.

4.   On September 29, 2009 (the "Filing Date"), Plaintiffs commenced a case under chapter 13 of Title 11 of the United States Code, which was assigned case number 09-bk-36374.

5.   At all times relevant, Plaintiffs were the owners and resided at that certain real property commonly known as 20930 Dalton Avenue, Torrance, CA 90501 (the "Real Property").

6.   Plaintiffs are informed and believe and based on such allege that as of the Filing Date, the Real Property had a value of $325,000.00.  See Exhibit "A".

7.   Plaintiffs are informed and believe and based on such allege that the Real Property was subject to a first deed of trust in favor of lender, Countrywide Home Loans, Inc. (hereinafter "Countrywide 1").  The beneficiary of the deed of trust is Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS 1").  A true and correct copy of the First Deed of Trust is attached hereto and is incorporated by reference herein as Exhibit "B".  The current servicing agent of the loan is Bank of America, N.A. (hereinafter "Bank of America 1"), which is owed a balance of $491,998.56 as of the Filing Date. A true and correct copy of a

-2-

Bank of America 1 mortgage statement is attached hereto and is

incorporated by reference herein as **Exhibit "C"**.

8.    Plaintiffs are informed and believe and based on such allege

that the Real Property was subject to a second deed of trust in

favor of Countrywide Bank, FSB. (hereinafter "Countrywide 2").    The

beneficiary of the deed of trust is Mortgage Electronic

Registration Systems, Inc. (hereinafter "MERS 2").    A true and

correct copy of the Second Deed of Trust is attached hereto and is

incorporated by reference herein as **Exhibit "D"**.    ".    The current

servicing agent of the loan is Bank of America, N.A. (hereinafter

"Bank of America 2"), which is owed a balance of $92,250.00 as of

the Filing Date.    A true and correct copy of a Bank of America 2

mortgage statement is attached hereto and is incorporated by

reference herein as **Exhibit "E"**.

I.

**FIRST CLAIM FOR RELIEF**

**VALUATION OF SECURITY**

9.    Plaintiffs re-allege the allegations in paragraphs 1 through 8

of the Complaint as if fully set forth here.

10.    Plaintiffs allege that the Real Property became property of the

bankruptcy estate upon the filing of the petition, which commenced

the underlying chapter 13 case.

11.    Pursuant to 11 U.S.C. §506(a) and Fed. R. Bankr. Proc. 3012,

Plaintiff requests that the Court determine the value of the Real

Property.

## II.

### SECOND CLAIM FOR RELIEF

### DETERMINATION OF THE EXTENT OF THE SECURED LIEN OF COUNTRYWIDE 1

### FOR BENEFICIARY MERS 1 (SERVICED BY BANK OF AMERICA 1)

12.   Plaintiffs re-allege the allegations in paragraphs 1 through 11

of the Complaint as if fully set forth here.

13.   Pursuant to 11 U.S.C. §506(a) and Fed. R. Bankr. Proc. 3012,

Plaintiffs request that the Court determine the nature and extent

of the lien held by Countrywide 1 for beneficiary MERS 1 (serviced

by Bank of America 1) on the Real Property.

## III.

### THIRD CLAIM FOR RELIEF

### DETERMINATION OF THE NATURE AND EXTENT OF THE SECURED LIEN OF

### COUNTRYWIDE 2 FOR BENEFICIARY MERS 2 (SERVICED BY BANK OF AMERICA 2)

14.   Plaintiffs re-allege the allegations paragraphs 1 through 13 of

the Complaint as if fully set forth here.

15.   Pursuant to 11 U.S.C. §506(a) and Fed. R. Bankr. Proc. 3012,

Plaintiffs request that the Court determine the nature and extent

of the lien held by Countrywide 2 for the beneficiary MERS 2

(serviced by Bank of America 2) on the Real Property.

## IV.

### FOURTH CLAIM FOR RELIEF

## EXTINGUISHMENT OF LIEN OF COUNTRYWIDE 2 FOR BENEFICIARY MERS 2

## (SERVICED BY BANK OF AMERICA 2)

16.   Plaintiffs re-allege the allegations in paragraphs 1 through 15 of the Complaint as there set forth here.

17.   Plaintiffs are informed and believe and based on such allege that the second claim of Countrywide 2 for the beneficiary MERS 2 (serviced by Bank of America 2) is completely unsecured and under applicable law may be determined to be a general unsecured claim.

18.   Plaintiffs are informed and believe and based on such allege that the Court has the authority under applicable law, including 11 U.S.C. 1322(b), to confirm a chapter 13 plan which provides for Countrywide 2 for the beneficiary MERS 2 (serviced by Bank of America 2) as a general unsecured creditor.

19.   Plaintiffs are informed and believe and based on such allege that the Court has the authority under applicable law to extinguish the second lien of Countrywide 2 for the beneficiary MERS 2 (serviced by Bank of America 2) upon Plaintiffs' completion of payments under the plan and issuance of a discharge.

## REQUEST FOR JUDGMENTS AND ORDERS

Clearly the Deed of Trust of Countrywide 2 for the beneficiary MERS 2 (serviced by Bank of America 2) is wholly unsecured as evidenced by the appraisal, deeds of trust and mortgage statements. Based on the foregoing, the Plaintiffs respectfully request that the Second Deed of Trust be ordered extinguished, and deemed an

1  unsecured claim and to have no further force or effects as a

2  secured lien against the Plaintiffs' residential property. In the

3  alternative, the Plaintiffs respectfully request to deem the Second

4  as a unsecured claim during the life of the Plaintiffs' chapter 13

5  plan, that upon the completion of all plan payments and entry of

6  discharge in this case pursuant to 11 U.S.C. §1328, the lien of

7  Countrywide 2 for the beneficiary MERS 2 (serviced by Bank of

8  America 2) will be void and will not constitute an encumbrance on

9  the real property described in the complaint, that upon completion

10 of all plan payments and upon entry of discharge in this case,

11 Countrywide 2 for the beneficiary MERS 2 (serviced by Bank of

12 America 2) is ordered to expeditiously reconvey the Deed of Trust

13 and otherwise take such steps as are required to clear title, free

14 of said lien, as to real property described in this complaint.

15 The lien shall remain valid if the case is dismissed or converted

16 to another chapter.

17

18

19

20 Dated:   October 1, 2009          PRICE LAW GROUP, APC

21

22

23                           By: _____

24                               Rabin J. Abkhnazarian

25                               Attorneys for Plaintiff

26

27

28

-6-

# EXHIBIT "A"

23

DECLARATION OF ROD HEFINGTON

IN SUPPORT OF VALUATION OF REAL PROPERTY

BANKRUTPCY CASE NO. 09-bk-36374

JESSE & TERESA COLEMAN

I, Rod Hefington, declare:

1.    I am a real estate appraiser, State of California License #AG008803.  I make this declaration based on my own personal knowledge, my education, my training and experience in the field of real estate appraisal and if called as a witness, I could and would competently testify thereto the facts stated herein.

2.    I have held a California Real Estate Appraiser License since _1991_ and have been doing residential real estate appraisals since _1976_ .  I am actively employed as a real estate appraiser and perform approximately _40_ per month.

3.    In August 2009 I was retained by Jesse Coleman to examine and appraise a single family residence located at 20930 Dalton Avenue, Torrance, CA 90501 (the "Property").  Attached is a true and correct copy of the Appraisal of Real Property report I prepared with respect to the Property.

4.    In determining the fair market value of the Property, I used both the sales comparison approach and the cost approach, with the greater weight given to the sales comparison approach.  I consider the sales approach to be the most reliable in

8

1   determining the fair market value because it more accurately

2   simulates buyer's perceptions and actions.

3   5.   Based upon my observations, inspection of the subject

4   property, and market research as well as my training, education

5   and experience as a residential appraiser, it is my professional

6   opinion that the Property has a fair market value of $325,000.00

7   as of August 3, 2009. Attached as Exhibit is a true and correct

8

9   copy of the Appraisal of Real Property report I prepared with

10  respect to the Property.

11  6.   I have no present or contemplated future interest in the

12  Property.  Neither my employment nor my compensation for the

13  appraisal is contingent on the value found.  I have no familial

14
    or personal relationship with Mr. or Mrs. Coleman other than the
15
    preparation of this appraisal.
16

17       I declare under the penalty of perjury under the laws of the

18  United States of America that the foregoing is true and correct.

19       Executed on _____, 2009 at _19395 Rockmen ST._

20  _Lake Elsinore, CA 92530_
    California.
21

22        _Signed  09/30/09_

23                                    _____
                                      Rod Hefington
·24

25

26

27

28



**APPRAISAL OF REAL PROPERTY**

**LOCATED AT:**
20930 Dalton Ave
Lot-19, Blk-25, Tr-4653, 57, Pgs 6-8.
Torrance, CA 90501-2319

**FOR:**
Coleman
20930 Dalton Ave
Torrance, CA  90501

**AS OF:**
06/03/2009

**BY:**
Rod Hefington
Lic# AG601803

Rod Hefington (951) 675-7655

Form GA2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# SUMMARY OF SALIENT FEATURES

| | |
|---|---|
| Subject Address | 20838 Dalton Ave |
| Legal Description | Lot-19, Blk-25, Tr-4983, 57, Pgs 8-9. |
| City | Torrance |
| County | Los Angeles |
| State | CA |
| Zip Code | 90501-2318 |
| Census Tract | 2920.80 |
| Map Reference | 763-J5 |
| | |
| Sale Price | $ N/A |
| Date of Sale | N/A |
| | |
| Owner | Coleman |
| Client | Coleman |
| | |
| Size (Square Feet) | 1,808 |
| Price per Square Feet | $ N/A |
| Location | Interior Street |
| Age | 1959 |
| Condition | Avg |
| Total Rooms | 7 |
| Bedrooms | 3 |
| Baths | 2 |
| | |
| Appraiser | Rod Heffington |
| Date of Appraised Value | 08/03/2008 |
| | |
| Final Estimate of Value | $ 326,000 |

Rod Herington (951) 676-7866

File No. 33145, Page #3

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No. 33145

| | | | |
|---|---|---|---|
| Property Address: 20930 Dalton Ave | | City: Torrance | State: CA   Zip Code: 90501-2319 |
| County: Los Angeles | Legal Description: Lot-19, Blk-25, Tr-4983, 57, Pgs 8-9. | | |

Assessor's Parcel #: 7349-008-019

| | | | |
|---|---|---|---|
| Tax Year: 2008 | R.E. Taxes: $ 4,852.12 | Special Assessments: $ N/A | Borrower (if applicable): Coleman |
| Current Owner of Record: Coleman | | Occupant: ☒ Owner ☐ Tenant ☐ Vacant | ☐ Manufactured Housing |
| Project Type: ☐ PUD ☐ Condominium ☐ Cooperative ☐ Other (describe) N/A | | HOA: $ N/A ☐ per year ☐ per month | |
| Market Area Name: Harbor Gateway | | Map Reference: 763-J5 | Census Tract: 2930.06 |

The purpose of this appraisal is to develop an opinion of: ☒ Market Value, or ☐ other type of value (describe)   Market Value / Private Valuation
This report reflects the following value: ☒ not Current, see comments): ☒ Current (the inspection date is the Effective Date) ☐ Retrospective ☐ Prospective
Approaches developed for this appraisal: ☒ Sales Comparison Approach ☒ Cost Approach ☐ Income Approach (See Reconciliation Comments and Scope of Work)
Property Rights Appraised: ☒ Fee Simple ☐ Leasehold ☐ Leased Fee ☐ Other (describe)
Intended Use: The intended use is for dual private related purposes for the client, the intended user.

Intended User(s) (by name or type): Coleman (Owner) / And/or assign.

| | |
|---|---|
| Client: Coleman | Address: 20930 Dalton Ave, Torrance, CA 90501 |
| Appraiser: Rod Herington | Address: 18095 Rockman St, Lake Elsinore, CA 92530 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Location: | ☐ Urban ☒ Suburban ☐ Rural | Predominant Occupancy | One-Unit Housing | | Present Land Use | Change in Land Use |
| Built up: | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | PRICE $(000) | AGE (yrs) | One-Unit 61 % | ☒ Not Likely |
| Growth rate: | ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner | | | 2-4 Unit 32 % | ☐ Likely ☐ In Process * |
| Property values: | ☐ Increasing ☐ Stable ☒ Declining | ☐ Tenant | 180 Low 2 | | Multi-Unit 2 % | * To: |
| Demand/supply: | ☐ Shortage ☐ In Balance ☒ Over Supply | ☒ Vacant (0-5%) | 740 High 46 | | Comm'l 5 % | |
| Marketing time: | ☐ Under 3 Mos. ☐ 3-6 Mos. ☒ Over 6 Mos. | ☐ Vacant (>5%) | 360 Pred 66 | | Vacant 0 % | |

Market Area Boundaries, Description, and Market Conditions (including support for the above characteristics and trends): Neighborhood consists of one and
two story single family homes showing various ages, styles and quality. Neighborhood is located in the Los Angeles City Strip of
Torrance, in the area known as Harbor Gateway, near all convenient services, including freeway access, reflecting average
condition and appeal. The neighborhood boundaries are as follows; N W - The 405 Frwy & Western Ave, S E - Sepulveda Blvd &
Normandie Ave. Current market conditions are reflective of a declining market, with marketing time being 3-6+ months. If property
listed. Conventional/FHA/VA & Private financing are all evident in the area. The supply outweighs the demand, with values being in a
declining state. There are no other adverse condition noted.

| | | | |
|---|---|---|---|
| Dimensions: 50 x 135 | | Site Area: 6,750 | |
| Zoning Classification: R1-1 | | Description: Single Family Residential | |
| Zoning Compliance: ☒ Legal ☐ Legal nonconforming (grandfathered) ☐ Illegal ☐ No zoning | | | |
| Are CC&Rs applicable? ☐ Yes ☒ No ☐ Unknown   Have the documents been reviewed? ☐ Yes ☒ No   Ground Rent (if applicable) $ N/A / N/A | | | |

Highest & Best Use as improved: ☒ Present use, or ☐ Other use (explain)   The highest and best use of the property as improved, is the existing
use. The current use gives the greatest net return to the land.
Actual Use as of Effective Date: Single Family   Use as appraised in this report: Single Family
Summary of Highest & Best Use: The highest and best use of this property as improved, or as vacant, is the existing use. The current use
gives the greatest net return to the land.

| Utilities | Public | Other | Provider/Description | Off-site Improvements | Type | Public | Private | Topography | Level |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | | Street | Asphalt | ☒ | ☐ | Size | Typical |
| Gas | ☒ | ☐ | | Curb/Gutter | Concrete | ☒ | ☐ | Shape | Rectangular |
| Water | ☒ | ☐ | | Sidewalk | Concrete | ☒ | ☐ | Drainage | Adequate |
| Sanitary Sewer | ☒ | ☐ | | Street Lights | Typical | ☒ | ☐ | View | None |
| Storm Sewer | ☒ | ☐ | | Alley | None | | | | |

Other site elements: ☒ Inside Lot ☐ Corner Lot ☐ Cul de Sac ☐ Underground Utilities ☐ Other (describe)
FEMA Spec'l Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 06037C1935F   FEMA Map Date 9/26/2008
Site Comments: The subject site is level and is typical in size, rectangular in shape, having partial landscaping front and rear, with
irrigation and some hardscape. The subject site has block fencing in the rear and sides, with wrought iron fencing in the front, with a
gate entry. There were no adversities noted.

| General Description | | Exterior Description | | Foundation | | Basement | ☒ None | Heating | |
|---|---|---|---|---|---|---|---|---|---|
| # of Units | 1   ☐ Acc.Unit | Foundation | Concrete/Avg | Slab | No | Area Sq. Ft. | None | Type | FAU |
| # of Stories | 2 | Exterior Walls | Stucco,Wd/Avg | Crawl Space | Yes | % Finished | N/A | Fuel | Gas |
| Type ☒ Det. ☐ Att. ☐ | | Roof Surface | Compl/Avg | Basement | No | Ceiling | N/A | | |
| Design (Style) Conventional | | Gutters & Dwnspts. Metal/Avg | | Sump Pump ☐ N/A | | Walls | N/A | Cooling | |
| ☒ Existing ☐ Proposed ☐ Und.Cons. | | Window Type | Alum,Wd/Avg | Dampness ☐ N/A | | Floor | N/A | Central | None |
| Actual Age (Yrs.) 1951 | | Screens/Screens | None | Settlement | None | Outside Entry | N/A | Other | N/A |
| Effective Age (Yrs.) 38 | | | | Infestation | None | | | | |

| Interior Description | | Appliances | | Attic | ☒ None | Amenities | | | Car Storage | ☐ None |
|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Crpt,Wd/Avg | Refrigerator ☐ | Stairs ☐ | | | Fireplace(s) # 3 | | Woodstove(s) # 0 | Garage # of cars ( 7   Tot.) |
| Walls | Plaster/Avg | Range/Oven ☒ | Drop Stair ☐ | Patio | Cov/Open | N/A | | | Attach | |
| Trim/Finish | Wood/Avg | Disposal ☒ | Scuttle ☒ | Deck | Balcony | N/A | | | Detach 5 | |
| Bath Floor | Tile/Avg | Dishwasher ☐ | Doorway ☐ | Porch | Covered | N/A | | | Bit.-In | |
| Bath Wainscot | Tile/Avg | Fan/Hood ☒ | Floor ☒ | Fence | Block/Iron | N/A | | | Carport | |
| Doors | Wood/Avg | Microwave ☐ | Heated ☐ | Pool | None | N/A | | | Driveway 2 | |
| | | Washer/Dryer ☐ | Finished ☐ | | | | | | Surface | Concrete |

Finished area above grade contains: 7 Rooms   3 Bedrooms   2 Bath(s)   1,606 Square Feet of Gross Living Area Above Grade
Additional features: The subject has two fireplaces, a covered porch, open patio slab, balcony, detached 5 car garage, block and
wrought iron fencing.
Describe the condition of the property (including physical, functional and external obsolescence): Subject property reflects average condition and appeal,
having been upgraded with wood and tile flooring, an extended 5 car detached garage, rear balcony, a second story addition with a
bedroom with fireplace and bathroom. All of the upgrading was done in a good workmanship like manner, with the exception. The subject
had some minor deferred maintenance such as; 1) Wood stairs need repair to access balcony. 2) The wood exterior has peeling
paint in need of repair. The estimated cost to cure is $2,580. Other than noted, there were no other chemical, or functional
inadequacies noted.

GP RESIDENTIAL   Copyright 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, a la mode, inc. must be acknowledged and credited.
Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE   3/2007

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No.: 33146

File No.: 33146 Page #4

| | |
|---|---|
| My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal. | |
| Data Source(s): Win2Data/MLS/Title/Co | |

| 1st Prior Subject Sale/Transfer | Analysis of sale/transfer history and/or any current agreement of sale/listing:  There were no transfers noted on the |
|---|---|
| Date:   None in 36 Months | subject property in the past 36 months. The comparables have not transferred in the past 12 |
| Price:   N/A | months. |
| Source(s): Win2Data/MLS/Title/Co | |
| 2nd Prior Subject Sale/Transfer | |
| Date:   None in 36 Months | |
| Price:   N/A | |
| Source(s): Win2Data/MLS/Title/Co | |

SALES COMPARISON APPROACH TO VALUE (if developed)  ☐ The Sales Comparison Approach was not developed for this appraisal.

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 20930 Delton Ave | 926 Javelin St | | 28629 New Hampshire Ave | | 20942 Dorkar Ave | |
| | Torrance | Torrance | | Torrance | | Torrance | |
| Proximity to Subject | | 0.85 miles E | | 0.61 miles E | | 0.67 miles SW | |
| Sale Price | $     N/A | | $ 345,000 | | $ 335,000 | | $ 426,000 |
| Sale Price/GLA | $     N/A /sq.ft. | $ 222.98 /sq.ft. | | $ 216.55 /sq.ft. | | $ 191.44 /sq.ft. | |
| Data Source(s) | Inspection | Win2Data/MLS/Title/Co | | Win2Data/MLS/Title/Co | | Win2Data/MLS/Title/Co | |
| Verification Source(s) | Win2Data | Doc# 851483 / DOM-7 | | Doc# 358111 / DOM-3 | | Doc# 1852934 / DOM-77 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | N/A | Conv 75% | | Conv 55% | | Conv 96% | |
| Concessions | None noted | None noted | | $10,000 | -10,580 | $4,500 | -4,500 |
| Date of Sale/Time | N/A | 08/08/2009 | -14,203 | 03/30/2009 | -34,477 | 10/17/2008 | -47,470 |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Interior Street | Interior Street | | Interior Street | | Interior Street | |
| Site | 6,750 | 6,648 | | 5,110 | | 6,750 | |
| View | None | None | | None | | None | |
| Design (Style) | Conventional | Conventional | | Conventional | | Conventional | |
| Quality of Construction | Avg | Avg | | Avg | | Avg | |
| Age | 1951 | 1950 | | 1950 | | 1951 | |
| Condition | Avg | Avg | | Avg | | Avg | |
| Above Grade | Total/Bdrms/Baths  7 / 3 / 2 | Total/Bdrms/Baths  7 / 3 / 2 | | Total/Bdrms/Baths  7 / 3 / 2 | | Total/Bdrms/Baths  8 / 4 / 3 | -4,500 |
| Room Count | | | | | | | |
| Gross Living Area | 1,809 sq.ft. | 1,550 sq.ft. | +18,125 | 1,547 sq.ft. | +18,313 | 2,226 sq.ft. | -29,190 |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Avg | Avg | | Avg | | Avg | |
| Heating/Cooling | FAU/None | FAU/None | | FAU/None | | FAU/None | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 6 Car Garage | 2 Car Garage | +7,500 | 2 Car Garage | +7,500 | 2 Car Garage | +7,500 |
| Porch/Patio/Deck | Prch,Pto,Blcny | Prch,Pto,Slab | | Prch,Pto,Slab | | Prch,Pto,Slab | |
| Other Improvements: | 2 Fin's | 1 Fp | +1,800 | 1 Fp | +1,800 | 2 Fp's | |
| Other Improvements: | Fence | Fence | | Fence | | Fence | |
| Other Improvements: | None | None | | None | | None | |
| Other Improvements: | None | None | | None | | None | |
| Other Improvements: | None | None | | None | | None | |
| Net Adjustment (Total) | | ☒ + ☐ - $ 10,923 | | ☒ + ☐ - $ -18,664 | | ☐ + ☒ - $ -119,220 | |
| Adjusted Sale Price | | | | | | | |
| of Comparables | | $ 355,923 | | $ 316,326 | | $ 306,771 | |

Summary of Sales Comparison Approach   All sales used were considered to be the best available at the inspection time. Due to the market being in a declining state, estimated at 24.7% (DQnews.com) annual, a negative time adjustment is being made. The noted sales concessions on the comparables No 2 and 3 affected the sales price, therefore an adjustment was necessary. The noted apparent deferred maintenance was considered in the final value determination. Comparables No 1, 3, & 4 are the closest in proximity, with comparables No 1 & 2 having the least net adjustments, therefore given the greatest weight in the valuation process.

Indicated Value by Sales Comparison Approach $   326,000

GP RESIDENTIAL

Copyright 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

3/2007

File No. 33146   Form #1

# RESIDENTIAL APPRAISAL SUMMARY REPORT

File No: 33146

| COST APPROACH TO VALUE (if developed) | ☐ The Cost Approach was not developed for this appraisal. |

Provide adequate information for replication of the following cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value): **Due to this area being mostly developed, the abstraction method was used for estimating land value, as actual land sales are limited, or are not available. This is considered typical for this type of property.**

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | = $ | 100,000 |
|---|---|---|---|
| Source of cost data: **Marshall&Swift/Building Contractors** | DWELLING   1,808   Sq.Ft. @ $   125.00   = $ | | 226,000 |
| Quality rating from cost service: **Avg**   Effective date of cost data: **Current** | None   Sq.Ft. @ $   = $ | | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.): | Sq.Ft. @ $   = $ | | |
| 1) Gross living area calculations were based on physical | Sq.Ft. @ $   = $ | | |
| measurements. | Sq.Ft. @ $   = $ | | |
| 2) The economic life is estimated at 65 years. The remaining | Porch,Patios,Balcony   = $ | | 30,000 |
| economic life is based on the effective age of the subject property. | Garage/Carport   856   Sq.Ft. @ $   30.00   = $ | | 25,680 |
| 3) Functional Obs: None noted. | Total Estimate of Cost-New   = $ | | 274,680 |
| 4) External Obs: None noted. | Less   Physical   Functional   External | | |
| | Depreciation   122,729   = $ | | 122,729 |
| | Depreciated Cost of Improvements   = $ | | 151,771 |
| | "As-is" Value of Site Improvements   = $ | | 75,000 |
| | = $ | | |
| Estimated Remaining Economic Life (if required):   47 Years | INDICATED VALUE BY COST APPROACH   = $ | | 326,771 |

| INCOME APPROACH TO VALUE (if developed) | ☒ The Income Approach was not developed for this appraisal. |

| Estimated Monthly Market Rent $   N/A   X Gross Rent Multiplier   N/A   = $   N/A | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM): **The Income Approach is not felt to be applicable for predominant owner occupied single family homes. There is limited or no rental data to base the Income Approach on, or to create a credible result.**

| PROJECT INFORMATION FOR PUDs (if applicable) | ☐ The Subject is part of a Planned Unit Development. |

Legal Name of Project:   **N/A**

Describe common elements and recreational facilities:   **N/A**

Indicated Value by: Sales Comparison Approach $ **325,000**   Cost Approach (if developed) $ **326,771**   Income Approach (if developed) $ **N/A**

Final Reconciliation: **Market Approach is given the greatest weight. The Cost Approach is a supportive value. The Income Approach is not applicable for this type of property.**

This appraisal is made ☒ "as is," ☐ ☐ subject to completion per plans and specifications on the basis of a Hypothetical Condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a Hypothetical Condition that the repairs or alterations have been completed, ☐ subject to the following required inspection based on the Extraordinary Assumption that the condition or deficiency does not require alteration or repair: **There were no conditions noted. This is a summary report.**

☒ This report is also subject to other Hypothetical Conditions and/or Extraordinary Assumptions as specified in the attached addenda.

Based on the degree of inspection of the subject property, as indicated below, Scope of Work, Statement of Assumptions and Limiting Conditions, and Appraiser's Certifications, my (our) Opinion of the Market Value (or other specified value type) as defined herein, of the real property that is the subject of this report is: $ **326,000** , as of **08/03/2009** , which is the effective date of this appraisal. If indicated above, this Opinion of Value is subject to Hypothetical Conditions and/or Extraordinary Assumptions included in this report. See attached addenda.

A true and complete copy of this report contains **24** pages, including exhibits which are considered an integral part of the report. This appraisal report may not be properly understood without reference to the information contained in the complete report.

**Attached Exhibits:**

| ☒ Scope of Work | ☒ Limiting Cond./Certifications | ☒ Narrative Addendum | ☒ Photograph Addenda | ☒ Sketch Addendum |
| ☒ Map Addenda | ☒ Additional Sales | ☐ Cost Addendum | ☒ Flood Addendum | ☐ Manuf. House Addendum |
| ☐ Hypothetical Conditions | ☒ Extraordinary Assumptions | ☒ Resume | ☒ License | ☒ E & O Insurance |

Client Contact:   Client Name:   **Coleman**

E-Mail:   robin@morioswainsgroup.com   Address:   **20836 Delton Ave, Torrance, CA 90501.**

| APPRAISER | SUPERVISORY APPRAISER (if required) or CO-APPRAISER (if applicable) |
|---|---|
| Appraiser Name:   **Rod Heffington** | Supervisory or Co-Appraiser Name: |
| Company:   **Quality Appraisal Service** | Company: |
| Phone: **(951) 679-7868**   Fax: **(951) 679-7868** | Phone:   Fax: |
| E-Mail:   **qualityappraisalservice@msn.com** | E-Mail: |
| Date of Report (Signature):   **08/19/2009** | Date of Report (Signature): |
| License or Certification #:   **AG026803**   State:   **CA** | License or Certification #:   State: |
| Designation:   **Certified General Appraiser** | Designation: |
| Expiration Date of License or Certification:   **03/12/2011** | Expiration Date of License or Certification: |
| Inspection of Subject   ☒ Interior & Exterior   ☐ Exterior Only   ☐ None | Inspection of Subject   ☐ Interior & Exterior   ☐ Exterior Only   ☐ None |
| Date of Inspection:   **08/03/2009** | Date of Inspection: |

Copyright 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.

**GP RESIDENTIAL**   Form GPRES2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE   3/2007

14

30

File No. 53145 Page #4

## ADDITIONAL COMPARABLE SALES

File No. 53145

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address | 20030 Dalton Ave | 21414 Halldale Ave | | 1523 261st St | | 1547 Woodbury Dr | |
| | Torrance | Torrance | | Torrance | | Torrance | |
| Proximity to Subject | | 0.36 miles S | | 2.90 miles S | | 1.86 miles S | |
| Sale Price | $ N/A | $ 437,000 | | $ 419,000 | | $ 449,000 | |
| Sale Price/GLA | $ N/A /sq.ft. | $ 176.73 /sq.ft. | | $ 282.97 /sq.ft. | | $ 250.00 /sq.ft. | |
| Data Source(s) | Inspection | Win2Data/MLS/TitleCo | | Win2Data/MLS/TitleCo | | Win2Data/MLS/TitleCo | |
| Verification Source(s) | Win2Data | Doc# 77642 / DOM-68 | | Doc# 1066611 / DOM-33 | | Doc# 334958 / DOM-36 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | N/A | Conv 90% | | FHA 98% | | Conv 80% | |
| Concessions | None noted | None noted | | $12,300 | -12,300 | None noted | |
| Date of Sale/Time | N/A | 01/21/2009 | -71,960 | 07/19/2008 | -8,439 | 03/10/2009 | -44,300 |
| Rights Appraised | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Location | Interior Street | Sides Comm | +5,000 | Interior Street | | Rears Traffic | +5,000 |
| Site | 6,750 | 6,170 | | 7,500 | | 6,750 | |
| View | None | None | | None | | None | |
| Design (Style) | Conventional | Conventional | | Conventional | | Conventional | |
| Quality of Construction | Avg | Avg | | Avg | | Avg | |
| Age | 1951 | 1955 | | 1957 | | 1950 | -3,000 |
| Condition | Avg | Avg | | Avg | | Avg | |
| Above Grade | Total | Bdrms | Baths 7 3 2 | Total | Bdrms | Baths 8 4 3 | -6,000 | Total | Bdrms | Baths 8 4 2 | | Total | Bdrms | Baths 7 4 3 | -6,000 |
| Room Count | | | | | | | |
| Gross Living Area | 1,996 sq.ft. | 2,472 sq.ft. | -41,800 | 2,020 sq.ft. | -13,230 | 1,792 sq.ft. | |
| Basement & Finished | None | None | | None | | None | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Avg | Avg | | Avg | | Avg | |
| Heating/Cooling | FAU/None | FAU/None | | FAU/None | | FAU/None | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | +7,500 | 1 Car Garage | +10,500 | 2 Car Garage | +7,500 |
| Porch/Patio/Deck | Prch,Pto,Blcny | Prch,Pto/Slab | | Prch,Pto/Slab | | Prch,Pto/Slab | |
| Other Improvements | 2 Fp's | 1 Fp | +1,500 | 1 Fp | +1,500 | 1 Fp | +1,500 |
| Other Improvements | Fence | Fence | | Fence | | Fence | |
| Other Improvements | None | None | | None | | None | |
| Other Improvements | None | None | | None | | None | |
| Other Improvements | None | None | | None | | None | |
| Net Adjustment (Total) | | ☐ + ☒ - $ -104,439 | | ☐ + ☒ - $ -22,469 | | ☐ + ☒ - $ -46,300 | |
| Adjusted Sale Price | | | | | | | |
| of Comparables | | $ 332,561 | | $ 387,511 | | $ 402,191 | |

Summary of Sales Comparison Approach   These are additional comparables used to help support the appraised value. Comparable No 4 sides a commercial property and comparable No 5 rears a traffic street, causing a location adjustment. The noted sales concessions on the comparable No 5 affected the sales price, therefore an adjustment was necessary. Comparable No 6 also is a two story home, similar to the subject property. There were no other adverse conditions noted.

**GP RESIDENTIAL**   Copyright 2007 by a la mode, inc. This form may be reproduced unmodified without written permission, however, a la mode, inc. must be acknowledged and credited.
Form GPRES2.(AC) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE    3/2007

File No. 33145  Page #7

File No. 33145

### SUPPLEMENTAL ADDENDUM

1) SUBJECT NEIGHBORHOOD; Neighborhood consists of one and two story single family homes showing various ages, styles and quality. The subject neighborhood is very conforming and consistent for a residential neighborhood. Neighborhood is located in the Los Angeles City Strip of Torrance, in the area known as Harbor Gateway, near all convenient services, including freeway access, reflecting average condition and appeal. The neighborhood boundaries are as follows; N W - The 405 Frwy & Western Ave, S E - Sepulveda Blvd & Normandie Ave. Current market conditions are reflective of a buyers market, with marketing time being 3-6+ months, if property listed. Conventional/FHA/VA&Private financing are all evident in the area. The supply outweighs the demand, with values being in a declining state. There are no other adverse condition noted.

2) SUBJECT SITE; The subject site is level and is typical in size, rectangular in shape, having partial landscaping front and rear, with irrigation and some hardscape. The subject site has block fencing in the rear and sides, with wrought iron fencing in the front, with a gate entry. There were no adversities noted. The current zoning of R7-1 (Single Family Residential), is legal and conforming. The general plan was also reviewed, reflecting no significant change, stating low residential. There were no adversities noted.

3) SUBJECT CONDITION OF IMPROVEMENTS; Subject property reflects average condition and appeal, having been upgraded with wood and tile flooring, an extended 5 car detached garage, rear balcony, a second story addition with a bedroom with fireplace and bathroom. All of the upgrading was done in a good workmanship like manner, with permits. The subject had some minor deferred maintenance such as; 1) Wood stairs need repair to access balcony. 2) The wood exterior has peeling paint in need of repair. The estimated cost to cure is $2,500. Other than the noted, there were no physical, or functional, inadequacies noted. The effective age is being considered less than the legal age, this is due to the noted upgrading.

4) MARKET APPROACH; The Market Approach is the main supporter of value. It is primarily based on sales of similar type properties in the subjects area, this is known as the principle of substitution. The adjustments being made for the differences in the comparables, compared to the subject property, is based upon an extensive research of Paired Sales Analysis. This determines what the market would return in value, of that particular difference, or possible amenity, to the property. This is known as the principle of contribution. The greatest weight was given to the most similar sale, sales, or trend, as noted in the report.

5) COST APPROACH; The Cost Approach is based upon the present replacement cost to replace the building with another building having the same utility. The Cost Approach is also considered a supportive approach to the Market and Income Approaches.

6) INCOME APPROACH; The Income Approach is based on an estimate of the subject property's possible net income. The net income is capitalized to arrive at an indication of value from the standpoint of an investment. This method measures the present worth of anticipated future benefits / (net income) derived from a property. On leased fee interest properties, this approach is considered to be the a main supporter of value.

7) FINAL RECONCILIATION; After reviewing and analyzing all three approaches, The Market, Cost, and Income Approaches, the Market Approach was determined to be the strongest supporter of value. The Cost Approach was considered supportive. The Income Approach is typically not applicable, due to the lack of enough rental income data to produce a credible result.

8) EXTRAORDINARY ASSUMPTION; It is assumed that all structures, given value in this report are legally permitted as stated. It is assumed that there are no unknown geological and/or environmental adverse issues. The physical characteristics of the comparables were either verified through county records, multiple listing service, and or homeowner verification, assumed to be as stated. The comparables are assumed to have no sales concessions. The current zoning and the stated flood zone are assumed to be as stated in this report. The property is assumed to have no unknown mold or termite problems. The type and condition of the utilities are assumed to be as stated. The estimated cost to cure is assumed to be as stated. If any of these items are found to be not true and/or correct, I reserve the right to change my appraisal.

9) HYPOTHETICAL CONDITION; None noted.

16
32

File No. 571451 Page # 3

## Photograph Addendum

| Owner | Coleman | | | | |
|---|---|---|---|---|---|
| Property Address | 20830 Dalton Ave | | | | |
| City | Terrance | County Los Angeles | | State CA | Zip Code 90501-2310 |
| Client | Coleman | | | | |



**Subject Front**

**Subject Rear**




**Subject Side**



**Subject Side**




**Subject Street (facing north)**



**Subject Street (facing south)**

Form PICSIX2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Photograph Addendum

| Owner | Coleman | | | | |
|-------|---------|--|--|--|--|
| Property Address | 20930 Delton Ave | | | | |
| City | Torrance | County Los Angeles | | State CA | Zip Code 90501-2219 |
| Client | Coleman | | | | |



Subject Detached Garage



Subject Detached Garage



Subject Detached Garage

Damaged Steps / Peeling Paint



Subject Electric Meter



Subject Gas Meter

Form PIC6X2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

18
34

Ex. No. 3315V Page # 10

## Photograph Addendum

| Owner | Coleman | | | | |
|---|---|---|---|---|---|
| Property Address | 20838 Dalton Ave | | | | |
| City | Terrance | County Los Angeles | State CA | Zip Code | 90501-2319 |
| Client | Coleman | | | | |



**Subject Stairs To Balcony**



**Subject Balcony**



**Subject Concrete Driveway**



**Subject Gate Entry**



**Subject Rear Yard**

**Subject View From Balcony**

19
35

File No. 337451 Page #11

### Photograph Addendum

| Owner | Coleman | | | | |
|---|---|---|---|---|---|
| Property Address | 20930 Dalton Ave | | | | |
| City | Torrance | County Los Angeles | State CA | Zip Code 90901-2319 | |
| Client | Coleman | | | | |



**Subject View From Balcony**



**Subject View From Balcony**



**Subject Crawl Space**



**Subject Interior**



**Subject Interior**



**Subject Interior**

## Comparable Photo Page

| Owner | Coleman | | | | |
|---|---|---|---|---|---|
| Property Address | 26930 Dalton Ave | | | | |
| City | Torrance | County | Los Angeles | State | CA | Zip Code | 90501-2319 |
| Client | Coleman | | | | |



### Comparable 1

| | |
|---|---|
| 928 Javelin St | |
| Prox. to Subject | 0.66 miles E |
| Sale Price | 345,000 |
| Gross Living Area | 1,550 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Interior Street |
| View | None |
| Site | 5,940 |
| Quality | Avg |
| Age | 1960 |



### Comparable 2

| | |
|---|---|
| 26929 New Hampshire Ave | |
| Prox. to Subject | 0.61 miles E |
| Sale Price | 335,000 |
| Gross Living Area | 1,547 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2 |
| Location | Interior Street |
| View | None |
| Site | 5,119 |
| Quality | Avg |
| Age | 1960 |



### Comparable 3

| | |
|---|---|
| 26942 Denker Ave | |
| Prox. to Subject | 0.67 miles SW |
| Sale Price | 425,000 |
| Gross Living Area | 2,220 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | Interior Street |
| View | None |
| Site | 6,750 |
| Quality | Avg |
| Age | 1951 |

## Comparable Photo Page

| Owner | Coleman | | | | |
|---|---|---|---|---|---|
| Property Address | 20636 Delton Ave | | | | |
| City | Torrance | County | Los Angeles | State CA | Zip Code 90501-2118 |
| Client | Coleman | | | | |



### Comparable 4

**31414 Halidale Ave**

| | |
|---|---|
| Prox. to Subject | 0.35 miles S |
| Sales Price | 437,000 |
| Gross Living Area | 2,472 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | Sides Comm |
| View | None |
| Site | 6,175 |
| Quality | Avg |
| Age | 1958 |



### Comparable 5

**1828 231st St**

| | |
|---|---|
| Prox. to Subject | 2.90 miles S |
| Sales Price | 410,000 |
| Gross Living Area | 2,020 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2 |
| Location | Interior Street |
| View | None |
| Site | 7,500 |
| Quality | Avg |
| Age | 1957 |



### Comparable 6

**1547 Woodbury Dr**

| | |
|---|---|
| Prox. to Subject | 1.65 miles S |
| Sales Price | 449,000 |
| Gross Living Area | 1,792 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3 |
| Location | Rears Traffic |
| View | None |
| Site | 5,700 |
| Quality | Avg |
| Age | 1969 |

Form PICPIXCR — "WinTOTAL" appraisal software by a la mode, Inc. — 1-800-ALAMODE

## Building Sketch

| Owner | Coleman | | | | |
|---|---|---|---|---|---|
| Property Address | 20930 Dalton Ave | | | | |
| City | Torrance | County Los Angeles | State CA | Zip Code 90501-2310 |
| Client | Coleman | | | | |



File No. 331-45  Page # 13

## Building Sketch

| | |
|---|---|
| Owner | Coleman |
| Property Address | 30838 Dalton Ave |
| City | Terrace | County | Los Angeles | State | CA | Zip Code | 90891-7319 |
| Client | Coleman |

### AREA CALCULATIONS SUMMARY

| Code | Description | Net Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 1258.0 | 1258.0 |
| GLA2 | Second Floor | 550.0 | 550.0 |
| P/P | Porch | 32.0 | |
| | Patio | 200.0 | |
| | Balcony | 200.0 | |
| | Concrete Driveway | 1248.0 | |
| | Concrete Slab | 404.0 | 2084.0 |
| GAR | Garage | 950.0 | 950.0 |
| | | | |
| | Net LIVABLE Area | (Rounded) | 1808 |

### LIVING AREA BREAKDOWN

| Breakdown | Subtotals |
|---|---|
| **First Floor** | |
| 28.0 x 30.5 | 849.0 |
| 4.0 x 15.0 | 60.0 |
| 8.0 x 26.0 | 208.0 |
| 6.0 x 25.0 | 150.0 |
| **Second Floor** | |
| 22.0 x 25.0 | 550.0 |
| | |
| 5 Items | (Rounded) | 1808 |

| First Floor | | | GLA1 |
|---|---|---|---|
| 28.0 | x | 30.0 = | 840.9 |
| 4.0 | x | 15.0 = | 60.0 |
| 8.0 | x | 26.0 = | 208.0 |
| 6.0 | x | 25.0 = | 150.0 |
| | | | |
| Area total (Rounded) = | | | 1258 |

| Garage | | | GAR |
|---|---|---|---|
| 19.0 | x | 50.0 = | 950.0 |
| | | | |
| Area total (Rounded) = | | | 950 |

| Second Floor | | | GLA2 |
|---|---|---|---|
| 22.0 | x | 25.0 = | 550.0 |
| | | | |
| Area total (Rounded) = | | | 550 |

| Porch | | | P/P |
|---|---|---|---|
| 4.0 | x | 8.0 = | 32.0 |
| | | | |
| Area total (Rounded) = | | | 32 |

| Patio | | | P/P |
|---|---|---|---|
| 8.0 | x | 25.0 = | 200.0 |
| | | | |
| Area total (Rounded) = | | | 200 |

| Balcony | | | P/P |
|---|---|---|---|
| 8.0 | x | 25.0 = | 200.0 |
| | | | |
| Area total (Rounded) = | | | 200 |

Form SKT.BldStd — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 33169  Form 41

## Building Sketch

| Owner | Coleman | | | | |
|---|---|---|---|---|---|
| Property Address | 20930 Dalton Ave | | | | |
| City | Torrance | County Los Angeles | State CA | Zip Code 90501-6319 |
| Client | Coleman | | | | |

| Concrete Driveway | | | P/P |
|---|---|---|---|
| 14.0 | x | 25.0 | = | 350.0 |
| 9.0 | x | 60.0 | = | 540.0 |
| 0.5 | x | 6.0 | x | 19.0 | = | 12.0 |
| 13.0 | x | 26.0 | = | 288.0 |

Area total (Rounded)  =    1248

| Concrete Slab | | | P/P |
|---|---|---|---|
| 4.0 | x | 26.0 | = | 104.0 |
| 12.0 | x | 25.0 | = | 300.0 |

Area total (Rounded)  =    404

Form SKT.BldSkl — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 33165 Page # 17

## Location Map

| Owner | Coleman | | | | |
|-------|---------|---|---|---|---|
| Property Address | 28930 Dalton Ave | | | | |
| City | Torrance | County  Los Angeles | State  CA | Zip Code  90501-2310 |
| Client | Coleman | | | | |



## Plat Map

| Owner | Coleman | | | | |
|---|---|---|---|---|---|
| Property Address | 20930 Dalton Ave | | | | |
| City | Torrance | County Los Angeles | State CA | Zip Code 90501-3319 | |
| Client | Coleman | | | | |



# APPRAISER RESUME

## PERSONAL DATA

| | |
|---|---|
| Name: Rodney Lee Heffington | Phone Number: (951) 674-7998, (951) 678-7957, (cell) (951) 442-4415 |
| Company Name: Quality Appraisal Service | Fax Number: (951) 678-7958 |
| Address: 18095 Rechman Street | Certifications: # AG008363 Certified General Appraiser |
| Lake Elsinore California 92530 | California State License |
| email qualityappraisalservice@msn.com | email rodheffington@msn.com |

## PROFESSIONAL MEMBERSHIPS

Certified General Appraiser, State Of California License No. AG008303

HUD Roster Appraiser #4L7PU1.

## EDUCATION

| Name of Institution (HS, College, University, etc.) | Dates Attended | Type of Degree or Certificate |
|---|---|---|
| North High School | 1972-1976 | Diploma |
| El Camino College/Zendo-Kai College | 1977-1984 | Diploma/Master's Degree |
| Harbor Junior College | 1984-1985 | Certificate |
| Southwestern School Of Law | 1985-1986 | Certificate |
| Professional/Technical Courses (Appraisal Related) | Date Completed | Sponsoring Organization |
| National USPAP Update Course | Continuing Education/2008 | OREA/Real Estate Trainers |
| FHA/VA Appraising | Continuing Education/2008 | OREA/Real Estate Trainers |
| The Appraiser as Expert Witness | Continuing Education/2008 | OREA/Real Estate Trainers |
| Fed&State Laws&Regs/Foreclosure Appraisals | Continuing Education/2008 | OREA/Real Estate Trainers |
| Expanding Your Appraisal Business | Continuing Education/2008 | OREA/Real Estate Trainers |
| Basic Appraisal Procedures / Principles | Continuing Education/2008 | OREA/Real Estate Trainers |
| Res Sales Comparison & Income Approach | Continuing Education/2008 | OREA/Real Estate Trainers |
| Res Report Writing/Res Site Valuation&Cost Approach | Continuing Education/2008 | OREA/Real Estate Trainers |
| Adv Res Applications/Complex Appraisal | Continuing Education/2008 | OREA/Real Estate Trainers |
| Seminars, Conferences, Clinics Attended | Date Completed | Sponsoring Organization |
| Numerous Seminars Attended in the Last 33 Years | 1976 To Present | Appraisal Institute, Society of Real Estate Appraisers FHA/VA HUD, RealEstateTrainers, VariousColleges. |
| | | |
| | | |
| | | |

## EMPLOYMENT HISTORY

| Employer's Name and Address | Business Title | Dates of Employment | % of Time Dedicated to Appraising |
|---|---|---|---|
| Quality Appraisal Service 18095 Rechman Street Lake Elsinore Ca 92530 | President | 1976 to Present | 100% Appraise |
| Ameriquest Mortgage 1100 Town & Country Road Suite 900 Orange Ca 92868 | Corporate Review Supervisor | Feb-92 to Oct-93 | 100% Review/Teach/Train |
| Landmark Equities Group 2415 Campus Dr Irvine Ca 92612 | Chief Operating Officer | Nov-05 to Jan-07 | 50% Appraise 50% Review |

## EXPERIENCE SUMMARY

1) I began appraising in 1976, (33 years experience). Hold a private pilots license. Marine Corps 1976-1980 (Active/Reserves)

2) I have appraised single family, multi family (res & comm), mobile home, modular home, vacant land, easements, encroachments, condominiums, cooperatives, custom homes (over $1,000,000), commercial buildings, commercial land, and rural property.

3) I have reviewed nationally, as a reviewer, and as a corporate review supervisor for Ameriquest Mortgage.

4) I am very easy to work with, due to my superior communication skills, and due to my vast experience with a multitude of various properties, in various areas, throughout the united states.

5) My father was an appraiser, which also gave me experience before my career even started.

6) Real Estate Trainers Instructor.

7) Martial Arts Master/Instructor.

## APPRAISAL COVERAGE AREAS

| | |
|---|---|
| RiversideCnty, OrangeCnty, SanDiegoCnty, LosAngelesCnty, SanBernardinoCnty. | Win2Data, Multiple Listing Service, Title Company |

**MARKET AND COST DATA SOURCES**

## REFERENCES

| | |
|---|---|
| Ron Perrot (951-695-1132) All Lenders Mortgage 27420 Jefferson Avenue Suite #281 Temecula Ca 92590 | Cory Hill (800-424-0638) Mortgage Center Of America 3060 Citrus Circle Walnut Creek Ca 94598 |
| Russ Macias (951-674-8794) Main Street Funding 123 S Main Street Lake Elsinore Ca 92530 | Pat Heldrich (951-674-7874) Royal Alliance Mortgage 10379 Commerce Center Dr #110 Rancho Cucamonga Ca 91730 |
| Sam Jirone (951-674-4999) United California Financial 800H Central Avenue Suite #110 Lake Elsinore Ca 92530 | Dan Workman (951-672-6370) Seramall Financial 28723 New Hub Dr #C San Key Ca 92585 |

SIGNATURE OF APPRAISER: _____  DATE: 03/19/2009

Form APR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

License



Business, Transportation & Housing Agency

## OFFICE OF REAL ESTATE APPRAISERS

### REAL ESTATE APPRAISER LICENSE

OREA APPRAISER IDENTIFICATION NUMBER    AG006803

#### RODNEY L. HEFINGTON

has successfully met the requirements for a license as a general real estate appraiser in the State of California and is, therefore, entitled to use the title "Certified General Real Estate Appraiser".

This license has been issued in accordance with the provisions of the Real Estate Appraisers' Licensing and Certification Law.

OFFICE OF REAL ESTATE APPRAISERS

Bob Clark

Date Issued:  March 13, 2009
Date Expires:  March 12, 2011

Audit No. 111437

## E & O Insurance



### COVER NOTE

**INSURED:** Rodney Lee Heffington

**MAILING ADDRESS:** 19095 Rockmen Street
Lake Elsinore, CA 92530

*This is to certify that the undersigned has procured insurance coverage as hereafter specified from certain companies and/or underwriters.*

**EFFECTIVE:** 04/12/2009      **EXPIRATION:** 04/12/2010      **RETROACTIVE:** 04/12/1995

**COVERAGE:** Professional Liability for Specified Profession

Profession: Real Estate Appraiser
Claims Made Form: MPL#26901 (9/87)
Limits: Per Occurrence: $1,000,000   Annual Aggregate: $1,000,000
Deductible: $1,000

**CONDITIONS:**

Real Estate Agent/ Broker Referral Indemnity
Knowledge of Wrongful Act Exclusion
Pending and/or Prior Litigation Exclusion
Defense within Policy Limit
Deductible Includes Loss Adjustment Expenses

**COMPANIES PARTICIPATING:**
National Union Fire Insurance Company of Pittsburg, PA

**ASSIGNED COVER NOTE # Z FREA 09-0123**

**CUSTOMER #** 0005449

Issued at: 4907 Morena Blvd., Suite 1415
San Diego, CA 92117

By:   *KDCarpenter*

**DATE:** 04/23/2009

Insurance, when effected shall be subject to all terms and conditions of policy (ies) which will be issued, and in event of any inconsistency herewith, the terms and provisions of the policy.

Rod Hefington (851) 576-7808

## FHMLA / USPAP ADDENDUM

| | |
|---|---|
| Owner | Coleman |
| Property Address | 28930 Delton Ave |
| City | Torrance | County Los Angeles | State CA | Zip Code 90501-2310 |
| Client | Coleman |

**Purpose**

The Purpose and Function of this appraisal is to estimate the value of the subject property as defined herein, and to assist the client, Coleman, in evaluating the subject property for dual private purposes: 1) To utilize in bankruptcy court. 2) To utilize for loan modification purposes. Not intended for use by any other party for any other purpose.

**Scope**

1) After receiving the assignment, an extensive search of all resources customary to the appraisal of residential real estate was made to determine general market trends, influences and other significant factors pertinent to the subject property.
2) A physical inspection of the subject property was performed, including photos.
3) A physical inspection with photos was taken of each comparable.
4) A written report was then completed, with appropriate adjustments being made to estimate an accurate estimate of value.
5) A complete summary report was then sent to the intended user.

**Intended Use / Intended User**

The intended user of this appraisal report is the Client and/or assign. The Intended Use is to evaluate the property that is the subject of this appraisal for dual private purposes, subject to the stated Scope Of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. No additional Intended Users are identified by the appraiser.

**History of Property**

Current listing information: The subject is not currently listed for sale.

Prior sale: There were no transfers noted on the subject property in the past 36 months.

**Exposure Time / Marketing Time**

The estimated marketing time is estimated at 3 to 6+ months. The exposure time is estimated at 3 to 6 months.

**Personal (non-realty) Transfers**

There were no Personal or non-realty Transfers recognized in this appraisal, or in this transaction.

**Additional Comments**

As of the date of this report I, Rod Hefington (Certified General Licensed Real Estate Appraiser), have completed the minimum requirements of continuing education, and in accordance with the Competency Provision of the USPAP, I certify that my knowledge and experience are sufficient to allow me to complete this appraisal assignment.

**Certification Supplement**

1. This appraisal assignment was not based on a requested minimum valuation, a specific valuation, or an approval of a loan.
2. My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result or the occurrence of a subsequent event.
3. It is assumed that all permits are available on all structures, including permanent foundations, and it is assumed the age given to the appraiser either by the county/city records, or by the home owner is true and accurate. If found not to be true and accurate, I reserve the right to change my appraisal.
4. Digital Signature: This report has been digitally signed by Rod Hefington. If there is any unauthorized use of this report, or my signature, this report will no longer be valid.

| | |
|---|---|
| Appraiser(s): Rod Hefington | Supervisory Appraiser(s): |
| Effective date / Report date  08/03/2009 | Effective date / Report date: |

**DEFINITION OF MARKET VALUE: DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale. Source: Appraisal Institute Dictionary of Real Estate Appraisal.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

Red Helington (951) 678-7866
Form ACR_DEFD — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

3a

48

PLF No. 331431 Page #22

**APPRAISER'S CERTIFICATION:** The appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the exterior areas of the subject property (trainee interior) and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and are taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** 20837 Oselon Ave, Torrance, CA 90501-2318

| APPRAISER: | SUPERVISORY APPRAISER (only if required): |
|---|---|
| Signature | Signature |
| Name: Ryli Harington | Name: |
| Date Signed: 06/19/2008 | Date Signed: |
| State Certification #: AG008803 | State Certification #: |
| or State License #: | or State License #: |
| State: CA | State: |
| Expiration Date of Certification or License: 03/12/2011 | Expiration Date of Certification or License: |

☐ Did   ☐ Did Not Inspect Property

---

# EXHIBIT "B"

▲   **This page is part of your document - DO NOT DISCARD**   ▲



**20071426449**   Pages: 022

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

06/13/07 AT 08:00AM

Fee: 73.00

Tax: 0.00

Other: 0.00

Total: 73.00

**Title Company**

**TITLE(S) :**

▲   ▲

**L E A D   S H E E T**

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**   **Number of AIN's Shown**

▲   **THIS FORM IS NOT TO BE DUPLICATED**   ▲

2

**COMMONWEALTH LAND TITLE CO.**
Recording Requested By
P. OTTONE

|||||||||||||||||||||||||||||||||||

**20071426449**

08/13/07

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
ENJIE KHALIL

5079820-6
7349-006-019

[Space Above This Line For Recording Data]                               21

21960 RH                    00015718479206007
(Escrow/Closing #)                (Doc ID #)

# DEED OF TRUST

MIN 1000157-0007453930-1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated JUNE 07, 2007             , together
with all Riders to this document.
(B) "Borrower" is
JESSE COLEMAN, AND TERESA M COLEMAN, HUSBAND AND WIFE AS JOINT TENANTS

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

-6A(CA) (0207)    CHL (08/05)(d)   VMP Mortgage Solutions, Inc (800)521-7291              Form 3005  1/01
CONV/VA

23991*                        *16718479200000100 8 A*

36
52

3

DOC ID #: 00015718479206007

Borrower's address is
20930 DALTON AVE, TORRANCE, CA 90501-2319
Borrower is the trustor under this Security Instrument.

(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613

(D) "Trustee" is
RECONTRUST COMPANY, N.A.
225 N HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated  JUNE 07, 2007        . The Note states that Borrower owes Lender
FOUR HUNDRED NINETY TWO THOUSAND and 00/100

Dollars (U.S. $ 492,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    JULY 01, 2037        .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

07 1426449

37
53

4

DOC ID #: 00015718479206007

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
              COUNTY              of              LOS ANGELES              :
           [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
LOT 19 IN BLOCK 25 OF TRACT NO. 4983, IN THE CITY OF LOS ANGELES, COUNTY
OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 57 PAGES
6 TO 9 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

Parcel ID Number: 7349-006-019                              which currently has the address of
                          20930 DALTON AVE,  TORRANCE                                      ,
                                              [Street/City]
California 90501-2319 ("Property Address"):
           [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

07 1426449

⊕ -6A(CA) (0207)          CHL (08/05)          Page 3 of 15          Form 3005 1/01

5

DOC ID #: 0001571847920600 7

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)        CHL (08/05)              Page 4 of 16                    Form 3005 1/01

07 1426449

DOC ID #: 00015718479206007

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

07 1426449

DOC ID #: 00015718479206007

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

07 1425449

8

DOC ID #: 00015718479206007

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

07 1426449

cq

DOC ID #: 00015718479206007

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

07 1426449

-6A(CA) (0207)    CHL (08/05)    Page 6 of 16    Form 3005 1/01

43
59

10

DOC ID #: 00015718419206007

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

07 1426449

-6A(CA) (0207)        CHL (08/05)              Page 9 of 16                    Form 3005 1/01

DOC ID #: 0001571B479206007

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

12

DOC ID #: 00015718479206007

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

07 1425449

-6A(CA) (0207)        CHL (08/05)            Page 11 of 16                    Form 3005 1/01

46

62

13

DOC ID #: 00015718479206007

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

07 1426449

47
63

14

DOC ID #: 00015718479206007

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

-6A(CA) (0207)        CHL (08/06)              Page 13 of 16                      Form 3005 1/01

07 1426449

ꓘ

DOC ID #: 0001571847920600

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

07 1426449

DOC ID #: 00015716479206007

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JESSE COLEMAN                                          -Borrower

_____ (Seal)
TERESA M  COLEMAN                                     -Borrower

_____ (Seal)
                                                                  -Borrower

_____ (Seal)
                                                                  -Borrower

07 1426449

-6A(CA) (0207)        CHL (08/05)              Page 15 of 16                        Form 3005  1/01

50

66

17

DOC ID #: 00015718479206007

State of California
County of Los Angeles                                } ss.

On June 7, 2007        before me,   Rosemary Hagopian, Notary Public
                                                                    personally appeared

Jesse Coleman   and Teresa M. Coleman

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Rosemary Hagopian*   (Seal)

ROSEMARY HAGOPIAN
Commission # 1525450
Notary Public - California
Los Angeles County
My Comm. Expires Nov 8, 2008

-6A(CA) (0207)        CHL (08/05)        Page 16 of 16                Form 3005  1/01

07 1425449

51

18

Assessor's Parcel Number:

After Recording Return To.
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
ENJIE KHALIL

Recording Requested By:



[Space Above This Line For Recording Data]

# FIXED/ADJUSTABLE RATE RIDER
(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

21960 RH              00015718479206007
[Escrow/Closing #]        [Doc ID #]

CONV
* MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)(d)            Page 1 of 5            Initials:



* 2 3 9 8 1 *              * 1 5 7 1 8 4 7 9 2 0 0 8 0 0 1 U 7 9 6 *

Q7 1426449

52

68

19

DOC ID #: 00015718479206007

THIS FIXED/ADJUSTABLE RATE RIDER is made this SEVENTH          day of
JUNE, 2007          , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

20930 DALTON AVE
TORRANCE, CA 90501-2319
[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST
RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE
AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT
ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of          6.875 %. The Note also provides
for a change in the initial fixed rate to an adjustable interest rate, as follows:

**4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(A) Change Dates**
   The initial fixed interest rate I will pay will change to an adjustable interest rate on the
first          day of JULY, 2017          , and the adjustable interest rate I will pay
may change on that day every 12th month thereafter. The date on which my initial fixed interest rate
changes to an adjustable interest rate, and each date on which my adjustable interest rate could
change, is called a "Change Date."
   **(B) The Index**
   Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new Index that is based upon
comparable information. The Note Holder will give me notice of this choice.
   **(C) Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO & ONE-QUARTER          percentage points (       2.250 %) to the Current Index.
the Note Holder will then round the result of this addition to the nearest one-eighth of one percentage
point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.

CONV
* MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)                    Page 2 of 5                    Initials

07 1426449

DOC ID #: 0001571847920607

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.875 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
• MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
  INTEREST ONLY
1U796-XX (06/04)                    Page 3 of 5                    Initials

21

DOC ID #: 00015718479206007

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U795-XX (06/04)                Page 4 of 5                    Initials

07 1426449

55
71

𝒲

DOC ID #: 00015718479206007

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

JESSE COLEMAN                                                    (Seal)
                                                                -Borrower

TERESA M. COLEMAN                                               (Seal)
                                                                -Borrower

                                                                (Seal)
                                                                -Borrower

                                                                (Seal)
                                                                -Borrower

CONV
MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family
INTEREST ONLY
1U796-XX (06/04)                    Page 5 of 5

07 1476449

56

72

# EXHIBIT "C"

1 of 4

**Bank of America**

**Home Loans**

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

Statement date: 08/28/2008
**Account Number 157194792**
Property address
20930 Dalton Ave.

**INTEREST-ONLY LOAN
MONTHLY STATEMENT
(Review the Interest-Only
Period)**



0146540 01 AT 0.207 **AUTO  T90 2608 90501-2319
PO 44 A0 0401----0-2-T- E0060308 IN 1 #88847
JESSE & TERESA M COLEMAN
20930 Dalton Ave
Torrance CA 90501-2319

## IMPORTANT NOTICE

If you and BAC Home Loans Servicing, LP have entered into an agreement to address your monthly payments, please make payments in accordance with this agreement.

If you have qualified for an interest rate reduction based upon current active military service, subsequent statements may not reflect the reduced payment amount. Please refer to the notice previously sent to you for the reduced payment amount.

---

**Your Payment Choices This Month**

The amounts listed below are total payments, including amounts collected for escrow items such as taxes and insurance premiums. You can also pay additional Principal any month in any amount, by specifying "Additional Principal" in the payment coupon.

| Payment Information | Total Payment Amount** | Principal and/or Interest Payment | Outstanding Late Charges | Optional Products* |
|---|---|---|---|---|
| Interest Only Payment*** | $3,294.82 | $2,918.74 | $663.76 | $0.00 |
| 15-Year Amortized Payment Choice | This Payment Choice is not available this month. | | | |
| Amortized Payment Choice | This Payment Choice is not available this month. | | | |

Please note: Amounts above may change based on payments made, received or returned before or after this statement was created.

**Outstanding late charges up to $400.00 are reflected in the payment choice amount.

*** The Amortized 15-16-year Amortized Payment Choice (Amortized Payment Choice) amounts are based on the assumption that these payments will always be received on the scheduled due date. You are not required to pay these amounts. The extra amount of Principal included with each of these alternative Amortized Payment Choices will be applied as a partial Prepayment of Principal on the date the payment is received. The interest portion of your payment will be applied as of the scheduled due date. The Amortized Payment is similar to, but not identical to the Interest and Principal payment that you will be required to make after the Interest-Only Period ends. When that happens, your Interest and Principal payments will be applied to your loan as of the scheduled due date. The Amortized Payment Choices will reduce your principal balance and the amount of interest you will pay over the life of this loan. These Amortized Payment Choices are provided to you as an additional service, but by no means are you limited to these choices when it comes to the amount of partial prepayments of principal that you may select on your own. IMPORTANT NOTE: Be sure you review any prepayment penalty provision you may have in your loan. Depending on the amount of any partial Prepayments, and when you make them, you may owe a prepayment charge at the time you payoff your loan.

---

**Your Home Loan Snapshot as of August 28, 2008**

| | | | |
|---|---|---|---|
| Loan type | 30 Yr Conv Jumbo ARM | Payment Due Date: | 09/01/2008 |
| Principal balance | $491,969.56 | Past Due Payment Amount | $13,176.90 |
| Escrow balance | $452.88 | Fees Due | $15.50 |
| Interest rate | 6.875% | Late Charge if payment is received after 09/16/2008 | $146.94 |

We may charge you a fee for any payment returned or rejected by your financial institution, subject to applicable law.

BAC Home Loans Servicing, LP is required by law to inform you that this communication is from a debt collector.

# EXHIBIT "D"



This page is part of your document - DO NOT DISCARD



**20071426450** Pages: 011

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

06/13/07 AT 08:00AM

Fee: 49.00
Tax: 0.00
Other: 0.00
Total: 49.00

**Title Company**

# TITLE(S) :



L E A D     S H E E T

**Assessor's Identification Number (AIN)**
To be completed by Examiner OR Title Company in black ink.          **Number of AIN's Shown**

—          —

**THIS FORM IS NOT TO BE DUPLICATED**

60

76

COMMONWEALTH LAND TITLE CO.
Recording Requested By:
P. OTTONE

*06/13/07*

**20071426450**

After Recording Return To
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
ENJIE KHALIL

50798 20-6
7347-006-019

[Space Above This Line For Recording Data]

2

10
27

21960 RH                   00015718480006007

[Escrow/Closing #]              [Doc ID #]

## DEED OF TRUST AND ASSIGNMENT OF RENTS

MIN 1001337-0001996418-1

This Deed of Trust secures an obligation which calls for payment of interest at a variable interest rate.
THIS DEED OF TRUST is made this 7th        day of JUNE, 2007        , between
JESSE COLEMAN, AND TERESA M COLEMAN, HUSBAND AND WIFE AS JOINT TENANTS

whose address is,
20930 DALTON AVE, TORRANCE, CA 90501

herein called "Trustor,"
RECONTRUST COMPANY, N.A.
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360

herein called "Trustee," and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS")
a Delaware corporation with an address of P.O Box 2026, Flint, MI 48501-2026, tel (888) 679-MERS.
MERS is the "Beneficiary" under this Deed of Trust and is acting solely as a nominee for
Countrywide Bank, FSB.

("Lender" or "you") and its successors and assigns, with an address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314

Trustor irrevocably grants, transfers and assigns to Trustee, in trust and with power of sale, all of the real
property in the City or Town of TORRANCE                              , County of
  LOS ANGELES                    , State of California, having the street address of
20930 DALTON AVE, TORRANCE, CA 90501-2319

● MERS HELOC - CA Deed of Trust
10968-CA (10/05)(d/i)                    Page 1 of 10

*23991*                    *6718480D00G0001D958*

3

DOC ID #: 00015718480006007

and more specifically described as:
LOT 19 IN BLOCK 25 OF TRACT NO. 4983, IN THE CITY OF LOS ANGELES, COUNTY
OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 57 PAGES
6 TO 9 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY.

Parcel ID Number: 7349006019                             together with all improvements
now or hereafter erected on the property, and all easements, rights, appurtenances, rents (subject however to
the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and
gas rights and profits, water, water stock, and water rights, and all fixtures now or hereafter attached to the
property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part
of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the
leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property."

    TRUSTOR UNDERSTANDS and agrees that MERS is a separate corporation acting solely as nominee
for Lender and Lender's successors and assigns, and holds only legal title to the interests granted by Trustor
in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and
Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not
limited to, the right to foreclose and sell the Property, and to take any action required of Lender including,
but not limited to, releasing or cancelling this Deed of Trust.

I.    THIS DEED OF TRUST SECURES:

    a.    All of the obligations of Trustor in favor of Lender or order under the terms of a revolving
credit agreement dated JUNE 7, 2007          , herein called Agreement The Agreement
provides, among other things, for the payment of all sums advanced by Lender from time to time
pursuant to the Agreement and for the payment of interest. The maximum principal obligation
under the Agreement to be secured by this Deed of Trust at any one time is
NINETY TWO THOUSAND TWO HUNDRED FIFTY and 00/100
Dollars ($ 92,250.00      ) unless Lender, with Trustor's written consent, hereafter
increases this amount. Advances made by Lender to protect the security of this Deed of Trust or to
preserve the Property shall not be subject to the limitation of the preceding sentence.

    The security of this Deed of Trust shall not be affected by the extension, renewal or modification
from time to time of the obligations, instruments or agreements described above.

    b    Payment of any and all obligations and liabilities, whatsoever, whether primary, secondary,
direct, indirect, fixed or contingent, whether now or hereafter due from Trustor (or any successor in
interest to Trustor) whether created directly or acquired by assignment if the document evidencing
such obligation or liability or any other writing signed by Trustor (or any successor in interest to
Trustor) specifically provides that said obligation or liability is secured by this Deed of Trust.

MERS HELOC - CA Deed of Trust
1D988-CA (10/06)                        Page 2 of 10

07 1426450

62
78

4

DOC ID #: 00015718480006007

c.    Performance of each agreement of Trustor herein contained or contained in any other agreement, instrument or other writing to which Trustor is a party if the same is written in connection with any of the foregoing.

d.    Payment of all sums to be expended by the Lender or Trustee pursuant to the terms hereof.

2.    TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:

a    To keep the Property in good condition and repair; not to remove or demolish any building or improvements thereon; to complete or cause to be completed any construction of buildings or other improvements thereon which are financed in whole or in part by the indebtedness secured hereby and to restore promptly and in good and workmanlike manner any building or other improvement which may be damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting the Property or requiring any alteration or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said Property in violation of law; to cultivate, irrigate, weed, fertilize, fumigate, spray, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general.

b    To provide, maintain and deliver to Lender fire and other insurance on the Property satisfactory to and with loss payable to Lender. The amount collected under any fire or other insurance policy may be applied by Lender upon indebtedness secured hereby and in such order as Lender may determine, or at option of Lender, the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default hereunder or invalidate any act done pursuant to such notice

c.    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender or Trustee, and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Lender or Trustee may appear, and in any suit brought by Lender to foreclose this Deed of Trust. It is agreed that the Lender shall be subrogated to the claims and liens of all parties whose claims or liens are discharged or paid with the proceeds of the Agreement secured hereby.

d.    To pay at least ten days before delinquency all taxes and assessments affecting the Property, including, without limitation, assessment on appurtenant water stock, all encumbrances, charges and liens on the Property or any part thereof, and all costs, fees and expenses of this trust.

e.    That should Trustor fail to make any payment or do any act as herein provided, then Lender or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may:

(1)    Make or do the same in such manner and to such extent as either may deem necessary or appropriate to protect the security hereof, Lender or Trustee being authorized to enter upon the Property for such purposes.

(2)    Appear in and defend any action or proceeding purporting to affect the security hereof or the rights or power of Lender or Trustee.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/06)                          Page 3 of 10

07 1426450

5

DOC ID #: 00015718480006007

(3)  Pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior and superior hereto.

(4)  In exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

f.    To pay immediately and without demand all sums so expended by Lender or Trustee, with interest from date of expenditure at the maximum rate allowed by law in effect at the date hereof or at the option of Lender, such sums may be added to the principal balance of any indebtedness secured hereby and shall bear the highest rate of interest as any such indebtedness.

g.    To pay for any statement provided for by the law in effect on the date hereof regarding the obligation secured hereby in the amount demanded by the Lender but not to exceed the maximum allowed by law at the time the statement is demanded.

3.    IT IS FURTHER AGREED THAT:

a.    Any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Lender who may apply or release such monies received by it in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

b.    By accepting payment of any sum secured hereby after its due date, or after the filing of notice of default and of election to sell, Lender shall not waive its right to require prompt payment when due of all other sums so secured, or to declare default for failure so to pay, or to proceed with the sale under any such notice of default and of election to sell, for any unpaid balance of said indebtedness. If Lender holds any additional security for any obligation secured hereby, it may enforce the sale thereof at its option, either before, contemporaneously with, or after the sale is made hereunder, and on any default of Trustor, Lender may, at its option, offset against any indebtedness owing by it to Trustor, the whole or any part of the indebtedness secured hereby.

c.    Without affecting the liability of any person, including, without limitation, Trustor, for the payment of any indebtedness secured hereby, or the lien of this Deed of Trust on the remainder of the Property for the full amount of any indebtedness unpaid, Lender and Trustee are respectively empowered as follows:

(1)  Lender may from time to time and without notice (a) release any person liable for the payment of any of the indebtedness, (b) extend the time or otherwise alter the terms of payment of any of the indebtedness, (c) accept additional security therefor of any kind, including Deeds of Trust or mortgages, (d) alter, substitute or release any of the Property securing the indebtedness

(2)  Trustee may, at any time, and from time to time, upon the written request of Lender (a) consent to the making of any map or plat of the Property, (b) join in granting any easement or creating any restriction thereon, (c) join in any subordination or other agreement affecting this Deed of Trust or the lien or charge thereof or, (d) reconvey, without any warranty, all or any part of the Property.

● NERS HELOC - CA Deed of Trust
1D968-CA (10/06)                              Page 4 of 10

07 1426450

64
80

Ⱳ

DOC ID #: 00015718480006007

d.    Upon (a) written request of Lender or (b) performance of all obligations of the Trustor hereunder and under each and every note, guarantee, Agreement or other writing evidencing the indebtedness secured hereby, and upon surrender of this Deed of Trust to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recital in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such reconveyance, Trustee may destroy said note, guarantee, Agreement or other evidence of indebtedness and this Deed of Trust (unless directed in such request to retain them).

e.    Trustor hereby gives to and confers upon Lender the right, power and authority during the continuance of these trusts to collect the rents, issues and profits of the Property and of any personal property located thereon, and hereby absolutely and unconditionally assigns all such rents, issues and profits to Lender, provided, however, that Lender hereby consents to the collection and retention of such rents, issues and profits as they accrue and become payable only if Trustor is not, at such time, in default with respect to payment of any indebtedness secured hereby or in the performance of any agreement hereunder. Upon any such default, Lender may at any time, without notice, either in person, by agent, or by a receiver to be appointed by a court, without regard to the adequacy of any security for the indebtedness hereby secured and without limiting the generality of Section 2.e.(1), above, enter upon and take possession of the Property or any part thereof, and in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Lender may determine; also perform such acts of repair, nurturing, cultivation, irrigation, weeding, fertilizing, fumigation, spraying, pruning or protection, as may be necessary or proper to conserve the value of the Property or any trees, plants or crops growing thereon; also lease the same or any part thereof for such rental, term, and upon such conditions as its judgment may dictate; also prepare for harvest, sever, remove, and sell any crops that may be growing upon the premises, and apply the net proceeds thereof to the indebtedness secured hereby. The entering upon and taking possession of the Property and performance or failure to perform any of the acts described in the preceding sentence, the collection of or failure to collect such rents, issues and profits, and the application thereof as aforesaid, shall not waive or cure any default or notice of default hereunder, or invalidate any act done pursuant to such notice and shall not constitute or otherwise result in any assumption by or liability of Lender for maintenance, depreciation, misuse or risk of loss other than for damage or loss to the Property due to Lender's gross negligence or intentional torts. Trustor also assigns to Trustee, as further security for the performance of the obligations secured hereby, all prepaid rents and all monies which may have been or may hereafter be deposited with said Trustor by any lessee of the premises herein described, to secure the payment of any rent, and upon default in the performance of any of the provisions hereof, Trustor agrees to deliver such rents and deposits to the Trustee.

f.    Upon default by Trustor in the performance of any payment or other obligation secured hereby or in the performance of any agreement hereunder, or if, whether voluntarily or involuntarily, there is a sale or transfer of all or any part of (i) the Property or an interest therein, or (ii) a beneficial interest in Trustor and Trustor is not a natural person, or if Trustor ceases to use the Property as Trustor's primary residence, Lender may declare all sums secured hereby immediately due without notice or demand and no waiver of this right shall be effective unless in writing and signed by Lender.

07 1426450

65
—
81

7

DOC ID #: 00015718480006007

g.   Waiver of a right granted to Lender hereunder as to one transaction or occurrence shall not be deemed to be a waiver of the right as to any subsequent transaction or occurrence. Lender may rescind any notice before Trustee's sale by executing a notice of rescission and recording the same. The recordation of such notice shall constitute also a cancellation of any prior declaration of default and demand for sale, and of any acceleration of maturity of indebtedness affected by any prior declaration or notice of default. The exercise by Lender of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, nor impair the right of the Lender to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the note or deed of trust, or any of the rights, obligations or remedies of the Lender or Trustee hereunder.

h.   At least three months or any lesser period required by law having elapsed between the recordation of the notice of default and the date of sale, Trustee, having first given notice of sale as then required by law, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as the Trustee may determine, at public auction to the highest bidder for cash, in lawful money of the United States of America, payable at the time of sale except as otherwise permitted by law. Trustee may postpone sale of all or any portion of the Property by public announcement at the time of sale, and from time to time thereafter may postpone the sale by public announcement, all as permitted by law. Trustee shall deliver to the purchaser its deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. The recital in any such deed of any matters or facts, stated either specifically or in general terms, or as conclusions of law or fact, shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Lender, may purchase at the sale. After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with the sale, the Trustee shall apply the proceeds of this sale to the payment of all sums then secured hereby, in such order and manner as may be required by the Lender; the remainder, if any, to be paid to the person or persons legally entitled thereto. If Lender shall elect to bring suit to foreclose this Deed of Trust in the manner and subject to the provisions, rights and remedies relating to the foreclosure of a mortgage, Lender shall be entitled to reasonable attorney's fees and litigation costs.

i.   Lender, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Lender and duly acknowledged and recorded in the office of the recorder of the county or counties where said Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Lender hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new trustee.

j.   This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder, including, without limitation, pledgees, of the note, guarantee, Agreement, or other evidence of indebtedness secured hereby, whether or not named as Lender herein. In this Deed of Trust, whenever the context so requires, the singular number includes the plural.

07 1426450

66
82

4

DOC ID #: 00015718480006007

k.   Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Lender or Trustee shall be a party unless brought by Trustee.

l.   If Trustor or any successor in interest to Trustor sells, transfers or encumbers any interest in the Property, whether voluntarily or involuntarily, or if a beneficial interest in Trustor is sold or transferred, voluntarily or involuntarily, and Trustor is not a natural person: (a) the transferor and the transferee shall each immediately give written notice of said transfer to the Lender, at its address designated on the first page of this Deed of Trust; (b) if this Deed of Trust secures Trustor's obligation under an Agreement as defined herein, all credit extended by Lender under the Agreement, whether before or after the Property is transferred, shall be secured under this Deed of Trust as if no transfer had occurred except for credit extended by Lender more than five days after it has received the written notices required by this paragraph.

m.   The pleading of any statute of limitations as a defense to any and all obligations secured by this Deed of Trust is hereby waived to the full extent permitted by law.

4.   WITH REGARD TO ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES, TRUSTOR AGREES:
a.   As used in this Paragraph 4:

(1)   "Environmental Law" means all federal, state and local law concerning the public health, safety or welfare, environment or a Hazardous Substance, including without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Sec. 9601 et seq., Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et seq., Toxic Substances Control Act, 15 U.S.C. Sec. 2601 et seq., Hazardous Materials Transportation Act, 49 U.S.C. Sec. 1801 et seq., Clean Water Act and Water Quality Act of 1987, 33 U.S.C. Sec. 1251 et seq., Safe Drinking Water Act, 41 U.S.C. Sec. 300f et seq., Clean Air Act, 42 U.S.C. Sec. 7901 et seq., Carpenter-Presley-Tanner Hazardous Account Act, Cal.Health & Safety Code Sec. 25300 et seq., Hazardous Waste Control Law, Cal.Health & Safety Code Sec. 25100 et seq., Porter-Cologne Water Quality Control Act, Cal.Water Code Sec. 1300 et seq., Hazardous Waste Disposal Land Use Law, Cal.Health & Safety Code Sec. 25220 et seq., Safe Drinking Water and Toxic Enforcement Act of 1986, Cal.Health & Safety Code Sec. 25249.5 et seq., Hazardous Substances Underground Storage Tank Law, Cal.Health & Safety Code Sec. 25280 et seq., Air Resources Law, Cal.Health & Safety Code Sec. 3900 et seq., Hazardous Materials Release Response Plans and Inventory, Cal.Health & Safety Code Sec. 25500 et seq., and Toxic Pits Cleanup Act of 1984, Cal.Health & Safety Code Sec. 25208 et seq.

(2)   "Hazardous Substance" means any substance which has characteristics of ignitability, corrosivity, toxicity, reactivity or radioactivity or other characteristics which render it dangerous or potentially dangerous to public health, safety or welfare or the environment, including without limitation, (i) petroleum or any fraction or other byproduct thereof, (ii) asbestos, (iii) lead, (iv) cyanide, (v) polychlorinated biphenyls, (vi) urea formaldehyde and (vii) anything defined as a "hazardous material," "toxic substance," "hazardous substance," "hazardous waste" or "waste" under any Environmental Law, including without limitation, "hazardous substance" as defined in Cal.Health & Safety Code Sec. 25316 and "waste" and "hazardous substance" as defined in Cal.Water Code Sec. 13050(d) and Sec. 13050(p)(1), respectively. The term is intended by Trustor and Lender to be interpreted in its most comprehensive and cumulative sense.

● MERS HELOC - CA Deed of Trust
1D988-CA (10/08)                        Page 7 of 10

07 1426450

67
83

9

DOC ID #: 00015718480006007

b.    Trustor represents and warrants that except as disclosed to and acknowledged in writing by Lender before the date of this Deed of Trust:

(1)   No Hazardous Substance has been located, used, manufactured, generated, treated, handled, stored, spilled, disposed of, discharged or released by any person on, under or about the Property.

(2)   Trustor has no knowledge of or reason to believe that there is any pending or threatened investigation, assessment, claim, demand, action or proceeding of any kind relating to (i) any alleged or actual Hazardous Substance located under or about the Property or (ii) alleged or actual violation or noncompliance by Trustor or any tenant of Trustor with regard to any Environmental Law involving the Property.

(3)   Neither Trustor nor any tenant of Trustor is required by any Environmental Law to obtain or maintain any permit, license, financial responsibility certificate or other approval as a condition to its business operations or in connection with its use, development or maintenance of the Property.

c.    Trustor represents and warrants that Trustor and every tenant of Trustor have been, are and will remain in full compliance with any Environmental Law applicable to its business operations and its use, development or maintenance of the Property.

d.    Trustor agrees to permit, or cause any tenant of Trustor to permit, Lender to enter and inspect the Property at any reasonable time for purposes of determining, as Lender deems necessary or desirable: (i) the existence, location and nature of any Hazardous Substance on, under or about the Property, (ii) the existence, location, nature, magnitude and spread of any Hazardous Substance that has been spilled, disposed of, discharged or released on, under or about the Property or (iii) whether or not Trustor and any tenant of Trustor are in compliance with applicable Environmental Law. If Trustor or its tenant fails to comply fully with the terms hereof, Lender may obtain affirmative injunctive relief therefor.

e.    Trustor agrees to indemnify and hold Lender and its successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including, without limitation, all costs of litigation and attorneys' fees, which Lender and its successors and assigns may directly or indirectly sustain or suffer as a consequence of any inaccuracy or breach of any representation, warranty or promise made in this Deed of Trust in connection with any Hazardous Substance or Environmental Law. Notwithstanding any of the language in this Deed of Trust to the contrary, this indemnity covers claims asserted after all the indebtedness secured by this Deed of Trust has been paid and discharged, whether or not this Deed of Trust has also been reconveyed to Trustor. The only exclusions hereto may relate to claims arising out of the affirmative acts of Lender or of a third party after Trustor's interest in the Property has terminated.

07 1426450

68

84

DOC ID #: 00015718480006007

f.    The provisions of this Paragraph 4 shall not be affected by the acquisition by Lender or its successors or assigns of any ownership or other interest in the Property beyond Lender's security interest in the Property created under this Deed of Trust, whether or not such acquisition is pursuant to the foreclosure of this Deed of Trust or a merger of the interest of the Lender or its successors and assigns in the Property.

5.    ADDITIONAL PROVISIONS:

a.    The execution of this Deed of Trust by any person who has no present interest in the Property shall not be deemed to indicate that such an interest presently exists. Rather, execution of this Deed of Trust by such a person shall constitute such person's agreement that if such person hereafter acquires an interest in the Property, such interest shall be subject to the interest granted hereunder.

b.    The execution of this Deed of Trust by any person who has a present interest in the Property shall not in itself be deemed to indicate that such person is liable to Lender for any obligation described in Section 1., above. Any personal liability of such person to Lender shall be determined on an independent basis (such as execution of the document or documents evidencing the obligation described in Section 1., above). Execution of this Deed of Trust by any such person shall nevertheless indicate that such person's interest in the Property shall be subject to the interest granted hereunder.

07 1426450

DOC ID #: 00015718480006007

The undersigned Trustors request that a copy of any notice of default, and of any notice of sale hereunder, be mailed to their respective addresses set forth below.

By signing below, Trustor agrees to all the terms and conditions of this Deed of Trust.

Mailing Address For Notices

JESSE COLEMAN
20930 DALTON AVE
TORRANCE, CA 90501

TERESA M. COLEMAN
20930 DALTON AVE
TORRANCE, CA 90501

State of California
County of Los Angeles
On June 7, 2007                    , before me Rosemary Hagopian, Notary Public
                                                            , personally appeared

Jesse Coleman and Teresa M. Coleman

                                        , personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.
      WITNESS my hand and official seal

Rosemary Hagopian

● MERS HELOC - CA Deed of Trust
1D986-CA (10/06)                                  Page 10 of 10



ROSEMARY HAGOPIAN
Commission # 1525480
Notary Public - California
Los Angeles County
My Comm. Expires Nov 8, 2008

07 1426450

70

# EXHIBIT "E"

1 of 2

## Bank of America 🇺🇸
### Home Loans

Customer Service
PO Box 5170
Simi Valley, CA 93062-5170

Billing Cycle
04/01/2009 - 04/30/2009

**Account Number 157184800**

Property address
20930 Dalton Ave

### HOME EQUITY LOAN STATEMENT



025902D AT 0349 **AUTO  T0 0 001 00501-2319
KHG A6 ..L2....L  609 IN 1 P50/31 p7001
JESSE & TERESA M COLEMAN
20930 Dalton Ave
Torrance CA 90501-2319

500
15
2009090317
03253
3¢
p

## IMPORTANT NOTICE

### This Statement Includes a Past-Due Amount.
Please send a payment immediately. Access to your credit line may be affected while the past-due amount remains outstanding. If you have already sent a payment, please accept our thanks, and disregard this notice.

### Make Past-Due Payments a Thing of the Past.
Mortgage-Pay on the Web allows YOU to make your monthly mortgage or Home Equity Line of Credit (HELOC) loan payment online each month. This service is free before or during the first third of your grace period. However, if allowed by applicable law, a $3.00 service charge will apply, if your online mortgage payment is made during the second third of your grace period and a $6.00 service charge will apply during the last third of your grace period. Check out our demo, at www.bankofamerica.com/cwcustomers, to see just how easy it is.

### Counseling Programs
Homeownership counseling programs are offered by both BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. and by non-profit organizations that are approved by the Department of HUD. These non-profit homeownership counseling programs may be able to assist you concerning your delinquent loan. For Counseling Agencies in your area, call 1-800-569-4287 or 1-800-877-8339 (TDD for hearing impaired). For eligible applicants, completion of a counseling program is required for insurance pursuant to section 203 of the National Housing Act (12 U.S.C. 1709).

| ACCOUNT SUMMARY | Loan Summary | | Payment Details | |
| --- | --- | --- | --- | --- |
| | Credit limit | $92,250.00 | Periodic FINANCE CHARGE | $284.33 |
| | Average daily balance | $92,250.00 | Amount past due | $320.35 |
| | Corresponding ANNUAL PERCENTAGE RATE | 3.750% | Minimum payment due: 05/29/2009 | $604.88 |
| | Daily periodic rate | 0.01027% | (see next page for transaction details) | |
| | Historical ANNUAL PERCENTAGE RATE | 3.750% | | |
| | Days in Cycle | 30 | | |
| | FINANCE CHARGE | $284.33 | | |

If you fail to make your Minimum Payment Due within the number of days set forth below in your payment coupon, from the Payment Due Date, you will be charged a late fee of 5% of the late payment.

### PAYMENT
We will credit your account the same day we receive your payment on a banking day (not including Saturday) prior to 5PM Pacific Time. Payments made on your account by check or other non-cash method, will be included in your "Available Credit" 10 days from receipt of payment. We may assess a late fee as described in your credit agreement if we do not receive your payment within 15 days of the payment due date. Good credit relies on the timely receipt of your payment. If your account is delinquent, we may submit a negative credit report to the credit reporting agencies.

As a reminder, failure to make your minimum payment by the payment due date could result in suspension or termination of your credit privileges.

72
88

# EXHIBIT "2"

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number

Rabin J Poumazarian
15760 Ventura Blvd Ste 1100
Encino, CA 91436
818-995-4540

*Attorney for Plaintiff*

FOR COURT USE ONLY

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA

In re:
Jesse Leon Coleman
Teresa Martinez Coleman

Debtor.

CHAPTER 13

CASE NUMBER LA09-36374-VZ

ADVERSARY NUMBER LA09-02279-VZ

Jesse Leon Coleman
Teresa Martinez Coleman

Plaintiff(s),

vs.

CountryWide Bank, FSB, Mortgage Electronic Registration et al

Defendant(s).

*(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them in)*

## SUMMONS AND NOTICE OF STATUS CONFERENCE

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint. You must also send a copy of your written response to the party shown in the upper left-hand corner of this page. Unless you have filed in duplicate and served a responsive pleading by 11-05-09 _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| | | | |
|---|---|---|---|
| **Hearing Date:** 12/17/2009 | **Time:** 10:00am | **Courtroom:** 1368 | **Floor:** 13th |

☒  255 East Temple Street, Los Angeles          ☐  411 West Fourth Street, Santa Ana

☐  21041 Burbank Boulevard, Woodland Hills    ☐  1415 State Street, Santa Barbara

☐  3420 Twelfth Street, Riverside

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference. Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval. The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: 10/06/09 _____

JON D. CERETTO
Clerk of the Bankruptcy Court

By: _____ William C Kaaumoana _____
            *Deputy Clerk*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009 (COA-SA)*                                                               F 7004-1

Revised 7/06

## PRE-STATUS CONFERENCE INSTRUCTIONS

1.       Pursuant to Local Bankruptcy Rule 7016-1(a)(2), all parties <u>shall</u> file a Joint Status Report at least fourteen (14) days before the date set for each Status Conference.  The Joint Status Report shall conform to Exhibit "A" attached to these instructions.  Use of the form attached as Exhibit "A" is <u>mandatory</u>.  Failure to use the form in Exhibit "A" may result in the imposition of monetary sanctions and/or the status conference being continued and parties being ordered to redo the status report to conform to Exhibit "A".

2.       A copy of these instructions shall be attached to every copy of the complaint served upon a party, and the <u>affidavit of service must state that these instructions as well as a copy of the summons and complaint and, if applicable, a copy of the Debtor Assistance Program Notice was served</u>.

3.       If no response to the complaint is timely filed, (1) plaintiff should file a request for entry of default by the clerk and a default judgment hearing date will be set at the Status Conference (the party should be prepared to propose an appropriate date to Judge Zurzolo based on Judge Zurzolo's self-calendaring procedure) and (2) no later than ten (10) days prior to the Status Conference plaintiff must file a Unilateral Status Report (completing Sections A, B and C of Exhibit "A") and a declaration setting forth the attempts made by plaintiff to contact or obtain the cooperation of the defendant as required by LBR7016-1(a).  For self calendaring dates, visit the Court's website at <u>www.cacb.uscourts.gov</u> :
         * Click "Information"
         * Under "Judges", click "Zurzolo, V."
         * Click "Forms/Instructions/Procedures/Self-Calendaring"
         * Under Self Calendaring, click "Hearing Calendar for 2006"
         and/or "Instructions and Key for Self-Calendar"

4.       During the Status Conference, it will be decided whether a pre-trial order should be required or a pre-trial conference should be set.

5.       During the Status Conference, the Court shall set a trial or a pre-trial conference.  The parties should be prepared to state whether they will agree to try the adversary proceeding by declaration in lieu of oral testimony.

6.       If one or more parties dispute whether the adversary proceeding is core within the meaning of 28 U.S.C. § 157(b), the party/parties disputing that the proceeding is core shall file and serve a memorandum of points and authorities and evidence in support of their positions fourteen (14) court days before the Status Conference.  Any reply must be filed at least seven (7) court days before the Status Conference. The Court will resolve this dispute at the Status Conference.  If any party fails to comply timely with these instructions, that failure shall be deemed a consent to a determination that the proceeding is core within the meaning of 28 U.S.C. § 157(b).

H:\common\vz\forms\instructions\PRESTATCONFERENCE

Revised 7/06

7.      If one or more parties dispute the jurisdiction of this Court, the party/parties disputing
jurisdiction shall file and serve a memorandum of points and authorities and evidence in support of their
positions at least fourteen (14) court days prior to the Status Conference. Any response shall be filed and
served no later than seven (7) court days prior to the Status Conference. The Court will resolve this
dispute at the Status Conference. If the objecting party does not timely file and serve its papers, that
failure shall be deemed a consent to whatever determination the Court makes.

8.      If one or more parties dispute whether a party has a right to a jury trial, the disputing
party/parties shall file and serve a memorandum of points and authorities and evidence in support of their
positions at least fourteen (14) court days prior to the Status Conference. Any response shall be filed and
served no later than seven (7) court days prior to the Status Conference. The Court will resolve this
dispute at the Status Conference. If the objecting party does not timely file and serve its papers, that
failure shall be deemed a consent to whatever determination the Court makes.

9.      Please take note that extensions of time to respond to a pleading are ineffective by stipulation of
the parties absent court approval. Requests to extend the response deadline to a date within five (5) days
of the hearing date will likely be denied unless the hearing date is continued to a date which permits the
Court adequate time to review and consider the pleadings.

10.     Please also take note that requests to continue a hearing will not be granted unless adequate
cause for the continuance is stated in the request. Merely discussing settlement is inadequate cause and
unless a settlement is reached prior to the hearing date, the parties must comply with all applicable filing
deadlines. If the parties have settled, a hearing may be continued to allow for execution and filing of the
written settlement if (1) the request for continuance contains a copy of the settlement or a substantial
recitation of its terms and (2) the request for a continuance is filed at least two (2) court days prior to the
hearing date. Generally, if a Respondent/Defendant is not represented by an attorney, an appearance by
the Respondent/Defendant will be required.

<div style="text-align:center">

VINCENT P. ZURZOLO
United States Bankruptcy Judge

</div>

H:\common\vz\forms\instructions\PRE STATCONFERENCE

92

Revised 7/06

1

# EXHIBIT "A"

2

3

4

5

6

7

# UNITED STATES BANKRUPTCY COURT
8

# CENTRAL DISTRICT OF CALIFORNIA

9

10    **In re**

11

12

13           **Debtor(s).**

14

15

16

17    **Plaintiff(s),**

18    **v.**

19

20           **Defendant(s).**

| | |
|---|---|
| | **BK. No. LA**<br>**Adv. No. LA** |
| | **Chapter** |
| | ☐ **JOINT STATUS REPORT**<br>☐ **UNILATERAL STATUS REPORT**<br>**FOR ADVERSARY PROCEEDING** |
| | **LOCAL BANKRUPTCY RULE 7016-1(a)(2)** |
| | **DATE:**<br>**TIME:**<br>**PLACE:** |

21        TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE _____.   In accordance

22    with Local Bankruptcy Rule ("LBR") 7016-1(a)(2), the party/parties submit the following ☐ JOINT STATUS REPORT

23    or ☐ UNILATERAL STATUS REPORT:

24    A.    **SERVICE/SUMMONS:**

25        1. Have all parties been served?                                    ☐ YES  ☐ NO

26        2. Has Plaintiff filed a declaration of service stating that the Pre-Status Conference Instructions, summons,

Revised 7/06

complaint and, if applicable, Debtor Assistance Program Notice was served?      ☐ YES ☐ NO

If yes, go on. If no, why not? Please explain:

B.    **RESPONSIVE PLEADINGS:**

1. Did all defendants timely file a plain answer (i.e. no counterclaims) to the complaint? ☐ YES ☐ NO

If yes, go to Section D. If no responsive pleading was filed proceed to Section C, otherwise continue.

2. If any defendant's answer includes counterclaims, are any parties other than Plaintiff included as defendants

to the claims?                                                                  ☐ YES ☐ NO

3. If counterclaims have been filed, have all counterdefendants responded to the counterclaims?

☐ YES ☐ NO

If no, what is the response deadline to the countercomplaint?

4. Did any defendant filed a 12(b) motion or other such responsive pleading?      ☐ YES ☐ NO

If yes, please identify the responsive pleading(s) filed and the date(s) of the hearing(s) on the

responsive pleading(s):

C.    **DEFAULT**

1. If any defendant has not responded timely, has plaintiff requested entry of default?   ☐ YES ☐ NO

If no, why not? Please explain:

2. If default has been requested, has it been entered?                           ☐ YES ☐ NO

If no, why not? Please explain:

3. If default has been entered has plaintiff scheduled a motion for default judgment?   ☐ YES ☐ NO

If no, please explain why not and state a proposed date for a hearing on a motion for default judgment:

D.    **FEDERAL RULE OF CIVIL PROCEDURE ("FRCP") 26(A), (F) AND LBR 7016-1(A)(2)**

**COMPLIANCE:**

1. The parties certify that they met and discussed the nature and basis of the claims and defenses.

Plaintiff:                                                                        ☐ YES ☐ NO

Defendant:                                                                       ☐ YES ☐ NO

H:\common\vz\forms\instructions\PRESTATCONFERENCE

Revised 7/06

2. The parties certify that they have exchanged documents.

Plaintiff:         □ YES  □ NO

Defendant:        □ YES  □ NO

3. The parties certify that they have exchanged witness lists.

Plaintiff:         □ YES  □ NO

Defendant:        □ YES  □ NO

4. The parties certify that they have exchanged other evidence as required by Rule 26(a)(1).

Plaintiff:         □ YES  □ NO

Defendant:        □ YES  □ NO

5. The parties certify that they have made the disclosures required by Rule 26(a)(1)(C) and (D) where

applicable.

Plaintiff:         □ YES  □ NO

Defendant:        □ YES  □ NO

6. The parties certify that they have discussed settlement.

Plaintiff:         □ YES  □ NO

Defendant:        □ YES  □ NO

7. The parties certify that they have proposed a joint discovery plan.

Plaintiff:         □ YES  □ NO

Defendant:        □ YES  □ NO

8. If any party answered no to any of the prior six (6) questions, please explain the reason(s):

E.       **DISCOVERY (FRCP 26(f)):**

**A Discovery Plan should be prepared and attached to this status report if it cannot be described below.**

1. Do the parties believe that changes should be made in the timing, form or requirement for disclosures under

Rule 26(a)?

Plaintiff:         □ YES  □ NO

H:\common\vz\forms\instructions\**PRESTATCONFERENCE**

Revised 7/06

Defendant: ☐ YES ☐ NO

If any party answered yes, please explain the reason(s):

2. List the form(s) of discovery each party will propound.

Plaintiff:

Defendant:

3. Do the parties anticipate any unusual discovery issues?

Plaintiff: ☐ YES ☐ NO

Defendant: ☐ YES ☐ NO

If any party answered yes, please identify the issues and explain the reason(s) for them:

4. Date by which each party expects to complete their discovery efforts:

Plaintiff:

Defendant:

F.    **SETTLEMENT:**

1. Do all parties request a judge to aid in settlement? If either party indicates "no", go to question 3.

Plaintiff ☐ YES ☐ NO

Defendant ☐ YES ☐ NO

2. Do all parties request the trial judge to aid in settlement?    If yes and if applicable, please name the judge(s)

of this Court that the parties would like to participate in settlement efforts:

**PLAINTIFF**    ☐ YES ☐ NO          **DEFENDANT**    ☐ YES ☐ NO

(1)                                    (1)
(2)                                    (2)
(3)                                    (3)

3. Do all parties seek any other type of mediation, arbitration, etc.? If both indicate yes, list the types.

**PLAINTIFF**    ☐ YES ☐ NO          **DEFENDANT**    ☐ YES ☐ NO

(1)                                    (1)
(2)                                    (2)

H:\common\vz\forms\instructions\PRESTATCONFERENCE

Revised 7/06

**G.     PRE-TRIAL:**

In most adversary proceedings, it is necessary to prepare a joint pre-trial stipulation and appear at a pre-trial

conference.

1. Date after which the pre-trial conference should be set:

Plaintiff:

Defendant:

2. Do you believe you can go directly to trial without a pre-trial stipulation and/or conference?

Plaintiff:                                                                    ☐ YES  ☐ NO

Defendant:                                                                  ☐ YES  ☐ NO

If either party answered yes, please state why:

**H.     OTHER PROPOSED DEADLINES:**

1. Proposed date by which all motions except motions to exclude evidence or approve a settlement must be

filed, set and heard:

Plaintiff:

Defendant:

2. Proposed deadline for amendment of pleadings and/or joinder of parties (any order permitting amendment or

joinder must be entered by this date):

Plaintiff:

Defendant:

3. Are there any other deadlines which the parties wish the Court to set:

Plaintiff:                                                                    ☐ YES  ☐ NO

Defendant:                                                                  ☐ YES  ☐ NO

If either party states yes, please identify the proposed subject and timing of the deadline:

H:\common\vz\forms\instructions\PRESTATCONFERENCE

Revised 7/06

1    I.      **MISCELLANEOUS**

2         1. Do you dispute the jurisdiction of this Court?

3              Plaintiff:                                                    ☐ YES  ☐ NO

4              Defendant:                                                   ☐ YES  ☐ NO

5         2. Do you dispute any party's allegation regarding the core/non-core nature of the adversary proceeding?

6              Plaintiff:                                                    ☐ YES  ☐ NO

7              Defendant:                                                   ☐ YES  ☐ NO

8         3. Do you dispute the asserted claim of any party to the right to a jury trial?

9              Plaintiff:                                                    ☐ YES  ☐ NO

10             Defendant:                                                   ☐ YES  ☐ NO

11        4. If a party answered yes to any of the above three (3) questions, has the party answering yes prepared a

12   memorandum of points and authorities and supporting evidence detailing their position, which memorandum is to be

13   filed fourteen (14) days prior to the Status Conference?                ☐ YES  ☐ NO

14        5. Are there any other unusual issues of which the Court should be aware?   ☐ YES  ☐ NO

15             If yes, please explain:

16

17                                    Respectfully submitted,

18   DATED:                      FIRM NAME: _____

19                               NAME: _____

20                               ATTORNEY FOR: _____

21

22   DATED:                      FIRM NAME: _____

23                               NAME: _____

24                               ATTORNEY FOR: _____

25

26   H:\common\vz\forms\instructions\PRESTATCONFERENCE

| In re: Jesse & Teresa Coleman | CHAPTER 13 |
|---|---|
| | CASE NUMBER LA09-36374-VZ |
| Debtor(s). | ADVERSARY NUMBER LA09-02279-VZ |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
15760 Ventura Boulevard, Suite 1100
Encino, CA 91436

The foregoing document described **SUMMONS AND NOTICE OF STATUS CONFERENCE; COMPLAINT TO DETERMINE VALUE OF REAL PROPERTY, DETERMINE THE EXTENT OF SECURED CLAIMS AND TO EXTINGUISH THE LIEN OF COUNTTYWIDE BANK, FSB; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC; BANK OF AMERICA, N.A. & COUNTRYWIDE HOME LOANS, INC.; PRE-STATUS CONFERENCE INSTRUCTIONS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>October 13, 2009</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

      Nancy K Curry   ecfnc@trustee13.com
      United States Trustee (LA)   ustpregion16.la.ecf@usdoj.gov

                          ☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL(Indicate method for each person or entity served):**
On <u>October 13, 2009</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Hon. Vincent P. Zurzolo   (U.S. Mail)
United States Bankruptcy Court - Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1360
Los Angeles, CA 90012

                          ☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

                          ☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 10/13/09 | Gabby Piceno | *(signature)* |
|---|---|---|
| Date | Typed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9021-1.1**

*January 2009*

| In re: Jesse & Teresa Coleman | CHAPTER 13 |
|---|---|
| Debtor(s). | CASE NUMBER LA09-36374-VZ<br>ADVERSARY NUMBER LA09-02279-VZ |

## BY U.S. MAIL

### CHAPTER 13 TRUSTEE
Nancy K. Curry
606 South Olive Street, Suite 950
Los Angeles, CA 90014

### DEBTORS
Jesse & Teresa Coleman
20930 Dalton Avenue
Torrance, CA 90501

### CREDITORS
Barbara J. Desoer, President
Bank of America Home Loans
PO Box 10222
Van Nuys CA 91410-0222

Barbara J. Desoer, President
BAC Home Loans Servicing, LP
4500 Park Granada
Calabasas, CA 91302

Marcus McDowell, Principal
Mortgage Electronic Registration Systems, Inc.
3321 Vincent Road
Pleasant Hill, CA 94523

Countrywide Home Loans, Inc.
(Bought by Bank of America Corporation)
4500 Park Granada #11
Calabasas, CA 91302

Countrywide Home Loans, Inc.
(Bought by Bank of America Corporation)
P.O. Box 10423
Van Nuys, CA 91410-0423

### VIA CERTIFIED MAIL
Attn: Walter Massey, Chairman
Bank of America Corporation
100 N. Tryon Street
Bank of America Corporate Center
Charlotte, NC 28255

### AGENT FOR SERVICE OF PROCESS FOR:
### BANK OF AMERICA CORPORATION, BAC HOME LOANS
### SERVICING, LP & COUNTRYWIDE HOME LOANS, INC.
C T Corporation System
818 West Seventh Street
Los Angeles, CA 90017

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                F 9021-1.1

# EXHIBIT "3"

**NoFeeRequired**

# U.S. Bankruptcy Court
## Central District Of California (Los Angeles)
## Adversary Proceeding #: 2:09-ap-02279-VZ

*Assigned to:* Vincent P. Zurzolo                    *Date Filed:* 10/05/09
*Lead BK Case:* 09-36374
*Lead BK Title:* Jesse Leon Coleman and Teresa Martinez
Coleman
*Lead BK Chapter:* 13
*Demand:*

*Nature[s] of Suit:* 21 Validity, priority or extent of lien or other interest in property
                     91 Declaratory judgment

### Plaintiff
--------------------------

**Jesse Leon Coleman**                    represented by **Rabin J Pournazarian**
20930 Dalton Avenue                        15760 Ventura Blvd Ste 1100
Torrance, CA 90501                         Encino, CA 91436
SSN / ITIN: xxx-xx-1830                    818-995-4540
                                           Email: rabin@pricelawgroup.com

                                           **Rabin J Pournazarian**
                                           15760 Ventura Blvd Ste 1100
                                           Encino, CA 91436
                                           818-995-4540
                                           *LEAD ATTORNEY*

**Teresa Martinez Coleman**               represented by
20930 Dalton Avenue                        **Rabin J Pournazarian**
Torrance, CA 90501                         (See above for address)
SSN / ITIN: xxx-xx-0282

                                           **Rabin J Pournazarian**
                                           (See above for address)
                                           *LEAD ATTORNEY*

V.

### Defendant
--------------------------

**CountryWide Bank , FSB**                 represented by **CountryWide Bank , FSB**
                                           PRO SE

**Mortgage Electronic Registration Systems, Inc.**

represented by **Mortgage Electronic Registration Systems, Inc.**
PRO SE

**N.A. & CountryWide Home Loans, Inc.**

represented by **N.A. & CountryWide Home Loans, Inc.**
PRO SE

**Bank Of America Home Loans**
PO Box 10222
Van Nuys, ca 91410-0222

represented by **Bank Of America Home Loans**
PRO SE

**Trustee**
--------------------

**Nancy K Curry**
606 South Olive Street, Suite 950
Los Angeles, CA 90014
213-689-3014

**U.S. Trustee**
--------------------

**United States Trustee (LA)**
725 S Figueroa St., 26th Floor
Los Angeles, CA 90017

| Filing Date | # | Docket Text |
|---|---|---|
| 10/05/2009 | 1 | Adversary case 2:09-ap-02279. Complaint by Jesse Leon Coleman, Teresa Martinez Coleman against CountryWide Bank, FSB, Mortgage Electronic Registration Systems, Inc., N.A. & CountryWide Home Loans, Inc., Bank Of America Home Loans. (Fee Not Required). *with proof of service* (Attachments: # 1 adversary proceeding cover sheet# 2 summons and notice of status conference) Nature of Suit: (21 (Validity, priority or extent of lien or other interest in property)),(91 (Declaratory judgment)) (Pournazarian, Rabin) (Entered: 10/05/2009) |
| 10/06/2009 | 2 | Summons Issued on Jesse Leon Coleman Date Issued 10/6/2009, Answer Due 11/5/2009; Teresa Martinez Coleman Date Issued 10/6/2009, Answer Due 11/5/2009 (Attachments: # 1 pre-status conference instructions) (Kaaumoana, William) (Entered: 10/06/2009) |
| 10/06/2009 | | Hearing Set (RE: related document(s) 1 Complaint filed by Plaintiff Jesse Leon Coleman, Plaintiff Teresa Martinez Coleman) Show Cause hearing to be held on 12/17/2009 at 10:00 AM at Crtrm 1368, 255 E Temple St., Los Angeles, CA 90012. (Kaaumoana, William) |

| | | |
|---|---|---|
| | | (Entered: 10/06/2009) |
| 10/13/2009 | 3 | Summons Service Executed on Jesse Leon Coleman 10/13/2009; Teresa Martinez Coleman 10/13/2009 (Pournazarian, Rabin) (Entered: 10/13/2009) |
| 11/13/2009 | 4 | Request for entry of default per Local Bankruptcy rule and clerk's entry of default as to COUNTRYWIDE BANK, FSB; MERS; BANK OF AMERICA, N.A. & COUNTRYWIDE HOME LOANS (Peters, Sandra) (Entered: 11/13/2009) |
| 12/07/2009 | 5 | Status report *(unilateral)* *with proof of service* Filed by Plaintiffs Jesse Leon Coleman, Teresa Martinez Coleman (RE: related document(s) 1 Complaint). (Pournazarian, Rabin) (Entered: 12/07/2009) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/17/2009 11:03:24 | | |
| **PACER Login:** | pa0081 | **Client Code:** |
| **Description:** | Docket Report | **Search Criteria:** 2:09-ap-02279-VZ Fil or Ent: filed From: 9/18/2008 To: 12/17/2009 Doc From: 0 Doc To: 99999999 Term: included Format: html |
| **Billable Pages:** | 2 | **Cost:** 0.16 |

(04

| In re: Coleman, Jesse & Teresa | CHAPTER 13 |
|---|---|
| | ADVERSARY CASE NUMBER LA09-02279-VZ |
| Debtor(s) | CASE NUMBER LA09-36374-VZ |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
15760 Ventura Boulevard, Suite 1100
Encino, CA 91436

The foregoing document described **MOTION FOR DEFAULT JUDGMENT UNDER LOCAL BANKRUPTCY RULE 7055-1** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On December 21, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

     Nancy K Curry    ecfnc@trustee13.com
     Rabin J Pournazarian    rabin@pricelawgroup.com
     United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____December 21, 2009_____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Hon. Vincent P. Zurzolo (U.S. Mail)
United States Bankruptcy Court - Central District of California
Roybal Federal Building
255 E. Temple Street, Suite 1360
Los Angeles, CA 90012-3332        ☒Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 21, 2009 | Nicholas Cheung | |
|---|---|---|
| Date | Typed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                            **F 9021-1.1**

| In re:  Coleman, Jesse & Teresa | CHAPTER 13 |
|---|---|
| Debtor(s). | ADVERSARY CASE NUMBER LA09-02279-VZ<br>CASE NUMBER  LA09-36374-VZ |

### BY U.S. MAIL

### CHAPTER 13 TRUSTEE
Nancy K. Curry
CHAPTER 13 TRUSTEE
606 South Olive Street, Suite 950
Los Angeles, CA 90014

### DEBTORS
Jesse & Teresa Coleman
20930 Dalton Avenue
Torrance, CA 90501

### CREDITORS
Barbara J. Desoer, President
Bank of America Home Loans
PO Box 10222
Van Nuys CA 91410-0222

Barbara J. Desoer, President
BAC Home Loans Servicing, LP
4500 Park Granada
Calabasas, CA 91302

Marcus McDowell, Principal
Mortgage Electronic Registration Systems, Inc.
3321 Vincent Road
Pleasant Hill, CA 94523

Countrywide Home Loans, Inc.
(Bought by Bank of America Corporation)
4500 Park Granada #11
Calabasas, CA 91302

Countrywide Home Loans, Inc.
(Bought by Bank of America Corporation)
P.O. Box 10423
Van Nuys, CA 91410-0423

### VIA CERTIFIED MAIL
Attn: Walter Massey, Chairman
Bank of America Corporation
100 N. Tryon Street
Bank of America Corporate Center
Charlotte, NC 28255

### AGENT FOR SERVICE OF PROCESS FOR:
### BANK OF AMERICA CORPORATION, BAC HOME LOANS
### SERVICING, LP & COUNTRYWIDE HOME LOANS, INC.
C T Corporation System
818 West Seventh Street
Los Angeles, CA 90017

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9021-1.1**

| In re:   Coleman, Jesse & Teresa | CHAPTER 13 |
|---|---|
| | ADVERSARY CASE NUMBER LA09-02279-VZ |
| Debtor(s). | CASE NUMBER  LA09-36374-VZ |

**AGENT FOR SERVICE OF PROCESS FOR**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC**
John Brosnan
3321 Vincent Road
Pleasant Hill, CA 94523

**ADDRESS ON PROOF OF CLAIM**
Matthew D. Tokarz, Attorney for Claimant
Miles, Bauer, Bergstrom & Winters, LLP
1665 Scenic Avenue, Suite 200
Costa Mesa, CA 92626

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                     **F 9021-1.1**